E. R. BENNETT, County Treasurer, Appellant, v. CHICAGO
LUMBER & COAL COMPANY et al., Appellees.

ORIGINAL NOTICE: Service—Agent—Insufficient Proof. Evidence
1  relative to the service of an original notice on a corporation by
   service on an agent reviewed, and held insufficient to establish the
   alleged agency.

ORIGINAL NOTICE: Service—Service on Director. Statutory author-.
2  ization of service of an original notice on a corporation by serving a
   *trustee, officer, or general managing agent* of the corporation (Sec.
   11077, Code of 1924), does not authorize such service on a mere
   *director* of the corporation.

ORIGINAL NOTICE: Service—Domestic Corporation—Service Out-
3  side State—Effect. Jurisdiction *in personam* of an Iowa corpora-
   tion is constitutionally obtained by proper service of a proper orig-
   inal notice *in a foreign state* on one of the last known or acting of-
   ficers of the corporation, as shown by the last statutory annual re-
   port of the corporation on file with the secretary of state of this
   state.

Headnote 1:  14a C. J. p. 808.  Headnote 2:  14a C. J. pp. 806, 807.
Headnote 3:  14a C. J. p. 800.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

MAY 6, 1924.

OPINION ON REHEARING APRIL 6, 1926.

ACTION by the plaintiff, as county treasurer, for the use
of the county and state, to recover taxes alleged to be due from
the defendant corporation. Service of the original notice was
made (1) upon an alleged agent in the general management of
the corporation's business; (2) upon one alleged to be a direc-
tor; (3) outside of the state upon the alleged vice president;
(4) within the state upon such alleged vice president. The indi-
viduals upon whom such service was made and an attorney ap-
peared in the court below as *amici curiæ,* and moved in each in-
stance to quash the service. The several motions were sustained,
from which rulings the plaintiff appeals.—*Reversed.*

*Vernon R. Seeburger* and *E. A. Lingenfelter,* for appellant.

*Clinton L. Nourse, Amicus Curiæ.*

FAVILLE, J.—The only question presented is as to the sufficiency of the service of the original notice.

The Chicago Lumber & Coal Company is alleged in the petition to be a corporation organized under the laws of Iowa, with its principal place of business at Des Moines, Polk County, Iowa. Its charter appears to have expired by statutory limitation in 1920. While we find no allegation to that effect, we understand it to be conceded that it was not, for some time prior to the commencement of this action, actively engaged in carrying on the business which its articles of incorporation authorized, but was and is engaged in winding up its affairs.

Section 3531 of the Code of 1897 (Section 11077, Code of 1924), provides that service on a corporation such as the defendant may be made "on any trustee or officer thereof, or on any agent employed in the general management of its business, or on any of the last known or acting officers of such corporation."

I.  The original notice was first served upon M. M. Ferguson. The return is not set out, but we assume that service was made upon him as an alleged agent of the defendant corporation. He appeared as *amicus curiæ,* and filed a motion to quash the service so made, supporting it by his affidavit to the effect that he was not, and had not been for many years, an officer of or stockholder in the defendant corporation, and was not, and for more than ten years had not been, in the employ of such corporation; and that the matters set forth in the petition did not grow out of any office or agency held by him for the corporation. A resistance to the motion was filed, based on the fact that Ferguson had, as agent of the corporation, receipted for a registered letter addressed to the corporation at its office and place of business, in which a demand was made for the taxes claimed to be due; that, in response to such demand, he had appeared at the office of the county treasurer, and, as is alleged, represented that he did so on behalf of and as the agent of the corporation. This was met by Ferguson's affidavit to the effect that he receipted

1. ORIGINAL NO-
TICE: service:
agent: insuf-
ficient proof.

for the registered letter without authority, and in the belief that his act in so doing would be ratified, and made inquiry at the treasurer's office of his own volition, and that he might report the claim to Mr. Robert Fullerton, if need be. He denied that he there stated that he was the agent of the company, and said that all he did was voluntarily done, through friendship for Mr. Fullerton, "at one time vice president" of the corporation. It is plain, we think, that Ferguson, whatever the fact may be as to his authority to receive and receipt for the registered letter, did not stand in such relation to the corporation that service on him of the original notice directed to the corporation brought the latter into court.

II. Section 1614-c of the Code Supplement of 1913 (Section 8439, Code of 1924), provides in part as follows:

"Any corporation, organized under the laws of this state * * * shall, between the first day of July and the first day of August of each year, make an annual report to the secretary of state, said report to be in such form as he may prescribe, upon a blank to be prepared by him for that purpose, and such report shall contain the following information: * * *

"5. The names and post-office addresses of its officers and directors, and whether any change of place of business has been made during the year previous to making said report."

It appears that the original notice was, on September 3 and 23, 1921, served on E. L. McColm, who also appeared as *amicus curiæ* and moved to quash such service, supporting his motions by the affidavits of himself and the acting secretary of the corporation. The affidavits are to the effect that McColm was not an officer or agent of the corporation, and had resigned as a director before the service of the original notice upon him. In resistance to this motion and others to be presently considered, there was submitted a copy of the last list of its officers and directors, filed by the corporation in the office of the secretary of state in June, 1919, wherein the name of E. L. McColm appears as a director.

2. ORIGINAL NOTICE: service: service on director.

Section 3531 provides for service on "any trustee or officer thereof, or on any agent employed in the general management of its business, or on any of the last known or acting officers."

Corporations not for pecuniary profit may have trustees. Section 1647, Code of 1897.

There is no statutory authority for trustees of a corporation for profit, nor any statutory recognition that such a corporation may be managed by trustees.

The terms "trustees" and "directors" are not used in the statute as synonymous. The defendant had directors, and the attempted service was on a director, not a trustee.

While a director is, of course, in one sense, an officer, yet the statutes clearly recognize a distinction between officers and directors.

The statutes in many places recognize that corporations for profit have directors and officers; for example, Section 1612, Code of 1897, requires a list of officers and directors to be filed with the secretary of state.

A director is one of a board. It is, generally speaking, the board of directors that has and exercises authority and control over the corporation, and not the individual directors. This is pointed out in *Oklahoma Fire Ins. Co. v. Barber Asphalt Pav. Co.*, 34 Okla. 149 (125 Pac. 734).

A director, merely as such, is not in the general management of the business of the corporation. Service on a director has been held not to be service on a managing agent. *Alabama & T. R. R. Co. v. Burns, McKibbin & Co.*, 43 Ala. 169. See 14-a Corpus Juris 805.

The question is controlled by statute in this state, and the statute does not authorize service on a director, as such; and he is not such an officer of the corporation as the statute contemplates can be served with original notice, to bind the corporation.

III. On September 29, 1921, the original notice was served on Robert Fullerton in the state of California, and again in July, 1922, in the state of Iowa. In neither case is the return set out in the record, but we understand it to be conceded that, in the first instance, the return showed service on the corporation by serving Robert Fullerton, as vice president, in California, and, in the latter, like service by serving the notice on him as the last known vice president in Des Moines, Polk County,

3. ORIGINAL NO-
TICE: service:
domestic cor-
poration: serv-
ice outside
state: effect.

Iowa. It appears that there is a Robert Fullerton, Sr., and a Robert Fullerton, Jr.; but we further understand it to be conceded that in both instances the service was made on Robert Fullerton, Sr., and that he was the person shown by the last list of officers on file in the office of the secretary of state to be the vice president. Mr. Clinton L. Nourse and Mr. Fullerton appeared as *amici curiæ,* and moved to quash the service in each instance.

The showing in support of the motion to quash the earlier service made in California was by affidavits filed before the later service in Iowa was made. Among these affidavits was one by Robert Fullerton, Sr., to the effect that he was not vice president of the corporation at the time of the service on him in California, and one by the secretary of the corporation, filed on December 27, 1921, giving the names and addresses of the then officers and directors of the company, from which it appeared that Robert Fullerton, Jr., was elected vice president, as the successor of Robert Fullerton, Sr., and was still acting in that capacity.

It thus appears that, at the time of the service on Robert Fullerton, Sr., in California, he was, as shown by the list of the corporation officers on file in the office of the secretary of state, the vice president, and, so far as then appeared, was the last known and acting vice president. Assuming that a good service upon him at that time would have been sufficient to have conferred jurisdiction over the corporation, we are confronted with the proposition whether, in an action *in personam,* unaided by attachment, jurisdiction of an Iowa corporation, with its principal place of business in this state, is obtained by serving the original notice beyond the borders of the state, upon an officer of the corporation.

Section 3531, as we have seen, provides that, where the defendant is a corporation such as this, service of the original notice may be made on any trustee or officer thereof, or on any agent employed in the general management of its business, or on any of the last known or acting officers of such corporation. Section 3534, Code Supplement, 1913 (Section 11081, Code of 1924), provides for service by publication, in certain cases, upon filing an affidavit that personal service cannot be made on the

defendant within this state.   Generally speaking, the cases so
provided for are actions *in rem,* and where the defendant has
property in this state which is before the court.   By Section
3537, Code of 1897 (Section 11086, Code of 1924), it is pro-
vided that:

"Actual personal service of the notice within or without
the state supersedes the necessity of publication."

Section 3800, Code of 1897 (Sections 11600 and 11601, Code
of 1924), is as follows:

"No personal judgment shall be rendered against a defend-
ant served by publication only who has not made an appear-
ance; but a personal judgment may be rendered against a de-
fendant, whether he appears or not, who has been served in any
mode provided in this Code other than by publication, whether
served within or without this state, if such defendant is a resi-
dent of the state."

The question is whether or not personal service of the orig-
inal notice upon the last known and acting vice president of
a domestic corporation, as shown by the list of corporate of-
ficers on file in the office of the secretary of state, even though
such service was outside the state of Iowa, gives the court juris-
diction to enter a judgment *in personam* against such corpora-
tion.

The method of service of an original notice is provided by
statute. The legislature of any state may by statute prescribe
the method of service upon a person or   orporation domiciled
within the state, subject to certain limitat ns.   The fundamen-
tal limitation is that the method provided shall be one reason-
ably calculated to give the defendant knowledge of the action
and an opportunity to be heard.   This is essential, in order to
comply with constitutional requirements and to constitute due
process of law.   *Earle v. McVeigh,* 91 U. S. 503 (23 L. Ed. 398);
*McDonald v. Mabee,* 243 U. S. 90 (61 L. Ed. 608); *Bardwell v.
Collins,* 44 Minn. 97; *Happy v. Mosher,* 48 N. Y. 313; *In re
Union Elev. R. Co.,* 112 N. Y. 61; *Kansas City v. Duncan,* 135
Mo. 571.

It is plain that, under the provisions of the Code, judgment
may be rendered against a defendant (either person or corpora-
tion) who is a resident of this state and who has been personally

served with notice, whether such service be had within or without the state. If this legislative enactment meets the essential requirement of due process of law, if it is a method reasonably calculated to give the defendant knowledge of the action and an opportunity to be heard, then it does not contravene constitutional requirements, and is valid.

Under our American system of jurisprudence, the question is really not one of the *power* of the state to exercise jurisdiction over persons or corporations domiciled within the state who are outside its territory, but rather of the *method* by which jurisdiction is obtained. Under constitutional limitations and guaranties, a state can only exercise its jurisdiction over persons or corporations domiciled within the state in such manner as to meet the requirements of due process of law.

In regard to the particular matter herein involved, "due process" seems to require only that the method of service prescribed shall be one reasonably calculated to give the defendant knowledge of the action and an opportunity to be heard. (See cases supra.) Does the statute in question meet this fundamental requirement? Although perhaps not technically exact, it is quite proper to say that the defendant corporation is domiciled in this state. It is a domestic corporation. It came into being only by virtue of the laws of this state. Its principal place of business, under its articles of incorporation, must be maintained in this state. It is amenable to the laws of this state. The state has inherent power and authority to prescribe the manner in which jurisdiction may be acquired over such a corporation, provided only that the method adopted is one reasonably calculated to give the defendant knowledge of the action and an opportunity to be heard. Such is the final, ultimate, and proper test. Such is due process of law. The statute in question being squared by this standard, it cannot be said to deviate therefrom or to deny to a domestic corporation due process of law. A corporation of Iowa duly and legally served by personal service on a proper officer outside of the state, with a notice reasonably calculated to apprise the corporation of the action and afford a reasonable opportunity to be heard, is brought thereby within the jurisdiction of the courts of this state, and rendered subject to a personal judgment.

In *Straub v. Lyman Land & Inv. Co.*, 30 S. D. 310 (138 N. W. 957), the Supreme Court of South Dakota quite recently considered the identical question, in a case involving a domestic corporation of that state, where the corporation was served with notice of suit by service on the proper officer of the corporation outside the state. The identical question now before us was considered by the court. In discussing a statute authorizing personal service on a domestic corporation by service on a proper officer outside the state, the court said:

"The purpose of such a statute is not to bring the non-resident officer of the corporation within the jurisdiction of the court, but to bring the domestic corporation within its jurisdiction. It does not seek to have the process of the court affect the personal or property rights of a person or corporation resident in another state; and therefore is not an attempt to extend the process of the court beyond the territorial limits of the state within which it is established. It follows that the only question really involved is whether or not such service constitutes due process of law within the state. The fundamental principle involved in 'due process of law' is that it shall give sufficient notice of the pendency of the action or proceeding, and a reasonable opportunity to a defendant to appear and assert his rights before a tribunal legally constituted to adjudicate such rights. And whenever a statutory mode of service is reasonably designed to accomplish that end, service in accordance therewith constitutes due process of law, and confers jurisdiction on the state court."

The court further said, in 31 S. D. 571 (141 N. W. 979):

"The important and crucial question is, as stated in appellant's brief on rehearing, whether the service thus authorized, constitutes 'due process of law.' In a discussion of this question, it must be borne in mind that a domestic corporation is always, not only a resident of the state, but is at all times within the state, and cannot be absent therefrom even temporarily. The real question, then, is whether the mode of service provided by this statute upon a corporation resident of and at all times within the state, constitutes 'due process of law.' The case before us, we think, is distinguishable from a case where a

natural person, either resident or nonresident, is attempted to be served with process without the boundaries of the state.''

And again:

''In this case, we are dealing with a resident of the state which never was and never can be outside its boundary lines. The constitutional limitation as to persons without the state does not apply to persons actually within its boundaries. As to persons within the state, the only constitutional restriction is that they shall not be deprived of life, liberty, or property without due process of law. As to this limitation, no distinction exists between actions *in rem* and actions *in personam*. The only question is whether the procedure provided by the statute is such as to constitute due process of law. If service of summons outside the state, upon a nonresident who has property in the state, is sufficient notice to afford an opportunity to appear and defend against the taking of its property, we see no reason for holding that, as to a domestic corporation, a like service upon its agent or officer outside the state is not likewise sufficient to constitute due process of law. We think the rule is that, when a citizen of the state is within its territorial jurisdiction, the state may authorize any mode of service reasonably designed and calculated to give him notice of the judicial proceeding impending, and to afford him a reasonable opportunity to defend in its courts, and any statutory mode of service which fulfills these requirements affords 'due process of law.' ''

This argument and conclusion by the Supreme Court of South Dakota are in accord with the authorities generally.

In *Clearwater Merc. Co. v. Roberts, Johnson, Rand Shoe Co.*, 51 Fla. 176 (40 So. 436), the court considered a statute providing for personal judgment against a domestic corporation on service by publication upon order of court upon certain conditions as to a failure to elect officers or appoint agents. The court said:

''Assuming, then, these conditions, was it competent in the legislature to provide, as to a domestic corporation, when it fails to put forth officers or agents upon whom service may be made, that by reason of such failure it shall be brought into court by publication, with proper precautions as to the ascertainment of the essential facts by the court in advance of any judg-

ment? We answer in the affirmative. We are dealing, not with natural persons, who create the governments, but with the fictitious entities called corporations, which are created by the government, deriving therefrom their very existence, with such limitations as the creating power may impose, except only such limitations as may be expressly or by clear implications forbidden by its organic law or by the Federal authority. No provision of the state Constitution is pointed out to us that inhibits such limitations, nor do we think that the due-process clause of the Federal Constitution is thereby violated. * * * The fundamental object of all laws relating to service of process is to give that notice which will, in the nature of things, most likely bring the attention of the corporation to commencement of the proceedings against it; and when legislation carries out this clear design, it should not be stricken down by the courts.''

In *Nelson v. Chicago, B. & Q. R. Co.*, 225 Ill. 197 (80 N. E. 109), the defendant was a domestic corporation, and was served, under the statute, by publication and by mail. The court stated the question as follows:

''It is first contended by the railroad company that Paragraph 5 of the Practice Act does not authorize service of process by publication and mail upon a defendant railroad company that has its principal office in this state, in a cause where the object of the suit is to obtain a judgment *in personam* against the railroad company; and, secondly, if service of process by publication and mail is authorized by said Paragraph 5 upon a defendant railroad company that has its principal office in this state, in a suit where a judgment *in personam* is sought against the railroad company, the statute is unconstitutional and void; as such service of process, it is said, does not constitute due process of law. * * * Can the legislature provide a constructive or substituted service of process by publication and mail, in lieu of actual service of process, in a case where the process cannot be actually served upon the defendant in the county where the statute expressly authorizes the suit to be commenced, although the defendant resides and is in the state?''

After a review of the authorities, the court held that the statute was constitutional and the service good.

The final and ultimate test of the constitutionality of such

a statute is whether or not the method provided for is one which has a reasonable tendency to give the corporation notice of the action and an opportunity to be heard. It may easily be conceived that a statute might provide for notice that would not meet this requirement, as was the case in *Pinney v. Providence Loan & Inv. Co.*, 106 Wis. 396 (82 N. W. 308). But such is not the situation in regard to this statute. It is not a case of the attempt to exercise extraterritorial jurisdiction. It is merely a provision for securing jurisdiction over a domestic corporation in a manner and by means fully and adequately giving the corporation reasonable notice of the pendency of the action and an opportunity to be heard. It was, therefore, constitutional, and the service was sufficient, and gave the court jurisdiction to enter a personal judgment against the corporation.

IV. It is earnestly contended that such holding runs counter to our pronouncement in *Raher v. Raher*, 150 Iowa 571. That case had to do with personal service on a defendant, a resident of Iowa, outside the state. The defendant was domiciled in the county in which the action was brought. We therein held that:

"* * * a state cannot, by providing for personal service outside of its territorial limits, authorize its courts to render personal judgment against a defendant thus served."

A vigorous dissent to the rule thus announced was made by the late Mr. Justice Deemer, in which Mr. Justice Sherwin joined.

The *Raher* case deals with an individual resident in Iowa, and the instant case deals with a domestic corporation. In the *Raher* case, the defendant himself was outside the state when served with process. In the instant case, the defendant corporation was *never* outside the state. It could not be outside the state. The service was merely upon an officer of the corporation who was outside the state, while the corporation, the entity being sued, was at all times within the state. Such a corporation is not ambulatory nor peripatetic. It can have but one "residence," that term being used in its popular sense. It is a creature of the state. In a sense, it is *always* "at home" in Iowa. See *State ex rel. Northwestern L. & C. Co. v. District Court*, 191 Iowa 244. Such a corporation cannot come into

being under the statute of Iowa, have its principal place of business here, and then have every officer living in some foreign jurisdiction, and thus escape the possibility of service of notice and jurisdiction of the courts of this state. The method provided by the statute for personal service on an officer of such a domestic corporation outside the state is due process of law.

For the reason pointed out, the order of the trial court must be, and it is,—*Reversed.*

All the justices concur.