KEOKUK & HAMILTON BRIDGE COMPANY, a Corporation, Appellant, v. CURTIN-HOWE CORPORATION et al., Appellees.

No. 43938.

JUNE 15, 1937.

REHEARING DENIED OCTOBER 1, 1937.

Hollingsworth & Hollingsworth, for appellee.

J. O. Boyd, for appellant.

PARSONS, J.—This case was brought by the plaintiff, Keokuk & Hamilton Bridge Company, a corporation, against the Curtin-Howe Corporation, of New Jersey, having its principal place of business in New York, and the defendant Joyce-Watkins Company, with its principal place of business in Chicago, Illinois.

There was no evidence taken in the case, and from the pleadings we gather that the Joyce-Watkins Company distributes timber, lumber and other wood products which have been subjected to the special treatment prescribed by the defendant, Curtin-Howe Corporation. The distribution of this specially treated lumber is under a contract or arrangement with the Curtin-Howe Corporation for a division of profits arising from the sale of such products. The plaintiff alleges that the Curtin-Howe Corporation was permitting the sale of timber and wood materials having a Zinc-Meta-Arsenite (commonly called ZMA) treatment, and the Joyce-Watkins Company was performing the part of acting as distributor of such ZMA treated timber, lumber and wood under said arrangement or contract between the Curtin-Howe Corporation and the Joyce-Watkins Company; that during the years 1929 and 1930 the plaintiff purchased of the defendants large quantities of timber, sills, beams, and sub-flooring for use in its bridge work, which was to have had this ZMA treatment, which was guaranteed to prevent decay and to give double life to lumber so treated. The plaintiff alleged that warranties and guaranties on the part of the defendants were contained in typewritten and printed circulars sent out to plaintiff prior to its purchase of the material. Plaintiff claimed that the treated material purchased was placed in its bridge structure, that decay set in and same was more rapid and destructive than any untreated lumber therefore used in their bridge work; that because of such decay and deterioration of said lumber, the asphalt plank on the top floor or wearing surface of said bridge gave way, and the surface floor became broken and damaged because of the dry rot developed in the ZMA treated lumber, which made it powdery, devoid of strength, and it was easily crushed, and did not support the top flooring and other structures which said lumber was designed to support. That by reason of this deterioration in the lumber so purchased, the plaintiff was damaged in the sum of $15,000.

■■■ Original notice was served upon the defendants in the manner and form as pointed out by subsection 6 of section 8421

of the Code. A default was taken against the Joyce-Watkins Company for want of appearance, and a judgment was entered thereon against that company for $10,000.

The defendant Curtin-Howe Corporation made a special appearance to quash the service so made by it through the secretary of state, under the provisions of subsection 6 of section 8421, setting forth that the only service made or attempted to be made upon it was through the original notice upon the secretary of state; that the defendant is a Delaware corporation with its principal place of business in New York; that it has never been engaged at any time in doing business in Iowa, and was never qualified to do business in Iowa under the statutes of the state; that it never designated the secretary of state as an agent upon whom an original notice might be served. The defendant claimed it never at any time entered into contractual relations with the plaintiff, nor entered into business transactions with the plaintiff in the state of Illinois, either by agent, or otherwise. That to require it to defend in this action would be a violation of the rights of this defendant under the provisions of section 1 of the 14th Amendment of the Constitution of the United States, and would be an attempt to deprive this defendant of its property without due process of law.

It further alleged that the defendant never did any business in Iowa subject to the jurisdiction of the court; that the statutes of the State of Iowa fail to provide for any service of process upon any foreign corporation which has failed to obtain a permit under chapter 386, Title XIX, of the Code of Iowa (section 8420 et seq.), whether the said foreign corporation has or has not done business in the state of Iowa, unless it has an agency within the state of Iowa, at the time of service, which this defendant does not have; that if the defendant did business in Iowa as claimed in plaintiff's petition such actions were casual and incidental and did not constitute doing business in Iowa sufficient to subject the defendant to the jurisdiction of the Iowa courts; that the defendant, being at the time of purchase a nonresident of Iowa and had never been qualified to do business in the state of Iowa, and having no agent or any agency in Iowa, it cannot be subjected to the jurisdiction of the Iowa court for acts done in 1929 and 1930, whether the acts complained of were done in Iowa or elsewhere; that section 8421, Code of Iowa, does not by its express terms apply to this defendant because it had never

applied for a permit to transact business in Iowa, nor had it ever appointed an agent for process in this state; and that the service made under and by virtue of section 8421 of the Code of Iowa, is not binding upon, nor does it bring this defendant, within the jurisdiction of the State of Iowa; and that the attempted service as shown by the records does not constitute due process of law. Attached to this was an affidavit supporting the statements set forth in the special appearance and motion to quash the service.

Plaintiff in its resistance set forth as grounds for overruling the special appearance of Curtin-Howe Corporation, that said defendant was in the state of Iowa in the person of its agent and representative, F. S. Shinn, and was through said agent actually within the state engaged in doing business, as shown by the plaintiff's petition and Exhibit A, the original notice served on the secretary of state, which it attached thereto; that the corporation came into the state and transacted business, and it was in the spirit of the statutes that a foreign corporation coming into the state and transacting business with citizens of the state should be amenable to process within the state on actions arising out of the business so transacted within the state; also because a citizen of this state should not be required to go into a foreign state for the purpose of bringing an action on transactions occurring within the state; and because Shinn, its agent, was sent into the state for the purpose of computing quantities and prices and securing business from the plaintiff, it impliedly agreed to be bound by the statutes of Iowa, and impliedly consented that the Iowa Courts should have jurisdiction over it in all matters arising out of the business therein transacted; that the jurisdiction did not impinge any of the defendant's constitutional or other civil rights, but did place the defendant on the same footing as citizens of Iowa, and on the same footing as other foreign corporations who comply with the laws of Iowa. It further resisted because the defendant was not entitled to preferential treatment on account of its failure to comply with the laws of Iowa relating to the admission of foreign corporations; that sustaining said special appearance would encourage foreign corporations to avoid conforming to the statutes of Iowa with reference to the admission of foreign corporations for the purpose of doing business in Iowa with citizens of Iowa; that this would impose hardship and perhaps unequal

burdens upon citizens of Iowa when transacting business with foreign corporations who had not applied for and secured admission to the state in accordance with the provisions of the Iowa statutes; that because the defendant had no other officer, agent or representative within the State of Iowa at the time of the institution of this suit, and had failed to designate a representative within the state for the purpose of serving process, the defendant impliedly consented that service of process should be made through the secretary of state, as provided by the statutes. The plaintiff attached an affidavit in support of the objections, marked Exhibit A to resistance, by James M. Fulton, who said he was superintendent of the Keokuk & Hamilton Bridge Company, residing at Keokuk, Iowa, and was in charge of the bridge across the Mississippi River at Keokuk; that during the months of May and June, 1929, he was visited by a Mr. F. S. Shinn, who represented the above named defendants in an effort to urge the placing of an order for the plaintiff for ZMA treated materials to go in the upper deck or floor of said bridge; that during the visits of Shinn the plaintiff was given a booklet distributed by the Curtin-Howe Corporation of 415 Lexington Avenue, New York City; that the negotiations for the purchase of said treated lumber were all made in Keokuk, Iowa.

The court on hearing the motion to quash service on behalf of Curtin-Howe Corporation, sustained same, which ruling plaintiff excepted, and appealed to this court.

So, the only question before the court is as to whether or not the district court of Lee County at Keokuk, Iowa, properly sustained the motion to quash service.

The record in this case fails to show that the defendant had had any agency whatever in the State of Iowa at the time of the service, or that it ever had any agency in the state of Iowa, except with the possibility of Shinn, who came into the state to undertake to sell the treated lumber of the Joyce-Watkins Company to the Keokuk & Hamilton Bridge Company, and made such sale in 1929 or 1930. That at no time since, and at no time before, had the Curtin-Howe Corporation ever had any transactions in the state of Iowa, or any one with authority to represent it within the state of Iowa. The resistance failed to show any other sale in Iowa, or any other business done in Iowa, or that the Curtin-Howe Corporation was at the time of service engaged in business in Iowa.

Sections 8420 and 8421 of the Code provide that any corporation for pecuniary profit organized under the laws of another state, or territory, which has transacted business in the state of Iowa since September 1, 1886, or desires hereafter to transact business in this state, shall file with the secretary of state a statement subscribed and sworn to by at least two of the principal officers of the corporation, setting forth following facts, to wit: Here follow six specifications, the first five of which have no bearing in this case, but the sixth is as follows:

''Certified copy of the resolution of the board of directors of said corporation giving name and address in Iowa of a resident agent on whom the service of original notice of civil suit in the courts of this state may be served. Failing which, or in the event such agent may not be found within the state, service of such process may then be made upon said corporation through the secretary of state by sending the original and two copies thereof to him, and on the original of which he shall accept service on behalf of said corporation, retain one copy for his files and send the other by registered mail to the corporation at the address of its home office as shown by the records in his office, which service shall have the same force and effect as if lawfully made upon said corporation within the county where such civil suit could be maintained against it under the laws of this state.''

One interpretation would be that if such a corporation should sell by an agent, to any person in the state, anything of any kind or nature, whether in interstate commerce or not, then it would subject itself to the service such as is provided for in subsection 6 of section 8421 of the Code, and come within the jurisdiction of the local court, so that it would have the power to render a judgment in personam by a process such as is provided for in said subsection 6. A special appearance in this case questions the right of said state to enact any such statute, and raises the question as to the validity of the service made under the statute.

There were two courses of action open to the defendant in this case: it could file a special appearance questioning the jurisdiction of the court; or it could remain away and permit judgment to go against it, and then if sued upon the judgment at its domicile, raise the question as to the validity of such service.

Possibly it also might have appeared in the case solely for the purpose of removing it to the federal court on the question of determining the validity of the service, and in either of these ways, perhaps could have presented to the court the question of the validity of the service.

There is a line of cases decided in the Supreme Court of the United States, under the statutes of the state of New Jersey and the state of Massachusetts. Each of these states has statutes providing for service upon a foreign owner of an automobile, which is driven in either of the states. Wuchter v. Pizzutti, 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 276, 57 A. L. R. 1230; Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. All these cases involved the use of the highways in New Jersey or Massachusetts by automobile owners living out of the state, and the question there was as to the validity of the statute providing for service through an officer of state, substantially as is provided in subsection 6 of section 8421.

But the jurisdiction in these cases was allowed only under the police power of the states and the right of the state to protect its people on the highways, which we think has no bearing in this case. So as a preliminary matter to be determined in cases arising under these two sections, Nos. 8420 and 8421, is involved the question of ''doing business''. What is that? Does it consist of an isolated act, simply one transaction, or is the corporation to be regarded as not in the state, unless it is actually engaged in doing business in the state?

In American Asphalt Roof Corp. v. Shankland, 205 Iowa 862, at page 864, 219 N. W. 28, 29, 60 A. L. R. 986, in an opinion by Judge Stevens, the court said:

''The points in dispute involve Federal questions, which must be determined in harmony with the decisions of the Supreme Court'', citing cases as follows: Philadelphia & R. R. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710; Green v. Chicago, B. & Q. R. Co. 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916; Peterson v. Chicago, R. I. & P. R. Co., 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841; Thurman v. Chicago, M. & St. P. R. Co., 254 Mass. 569, 151 N. E. 63, 46 A. L. R. 563; Tauza v. Susquehanna Coal Co., 220 N. Y. 259, 115 N. E. 915; Hall v. Wilder Mfg. Co., 316 Mo. 812, 293 S. W. 760, 52 A. L. R. 723.

The opinion in above case further says: ''The right of each state to enact laws for the service of original notices or summons upon foreign corporations not authorized to do business in such state, within prescribed constitutional limitations, is well-settled'', citing cases. And farther on, the opinion says, '' 'The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction and is by its duly authorized officers or agents present within the state or district where service is attempted.' ''

On page 866 of the opinion [219 N. W. 30], the court says: ''One of the rules firmly fixed by these decisions is that the mere solicitation by an agent of a foreign corporation of orders for goods does not amount to doing business, within the meaning of the decisions of the Supreme Court.''

In Coit & Co. v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819, plaintiff was engaged in the business of shipping from Illinois goods manufactured in that state, to its customers in Michigan, on orders given it through the mail or by its agents in Michigan. Plaintiff, through its duly authorized agent, entered into a written contract with the defendant, in the city of Detroit, Michigan, for the sale to him of a quantity of white lead at a specified price, to be paid for upon delivery; delivery was tendered at Detroit, and defendant refused to accept same on the ground that the plaintiff had not filed his articles of authorization with the state, and had not paid to the secretary of state a franchise fee, as provided by law, relying upon the familiar rule that a state may impose conditions upon a foreign corporation to do business within the state, saying, ''This rule has been recognized by the federal courts where it does not conflict with the power of congress to regulate commerce. But where the effect is to restrain or obstruct commerce among the states, it cannot be applied; the federal decisions, to which we must look for a construction of the constitution, holding that it is the right of persons residing in one state to contract and sell their commodities in another, unrestrained except where restraint is justified, under the police power, by states, or by act of congress, and that right extends to corporations. * * * The law in question imposes a tax upon corporations for the privilege of doing business in Michigan. It is a tax upon the occupation of the corporation, with a provision that all its contracts shall be

void until the tax is paid, which, if enforced, would embarrass plaintiff in its commerce with inhabitants of Michigan. It must. therefore be held that the act in question does not apply to foreign corporations whose business within this state consists merely of selling through itinerant agents, and delivering, commodities manufactured outside of this state.'' See, also, note to People v. Wemple, 27 Am. St. Rep. 542, beginning at page 547 to 568.

Mearshon v. Pottsville Lumber Co., 187 Pa. 12, 40 A. 1019, 67 Am. St. Rep. 560, holds that limitations imposed by a state upon the power of a corporation created under the laws of another state to make contracts within the state for carrying on commerce between the states violates that clause of the federal constitution which confers upon Congress the exclusive right to regulate such commerce.

The opinion also says, a corporation of one state may send its agents to another state to solicit orders for its goods, or contract for the sale thereof, without being embarrassed or obstructed by state requirements as to taking out licenses, filing certificates, establishing resident agencies, or like conditions. This case also cites People v. Wemple, supra.

A. Booth & Co. v. G. M. Weigand, 30 Utah 135, 83 Pac. 734, 10 L. R. A. (N. S.) 693, has a note to the effect that a single or isolated transaction by a foreign corporation, is not doing business within the state, within the meaning of the statutes prescribing conditions upon which foreign corporations may do business within the state, or providing for service of process alone.

The case holds that a single, isolated transaction by a foreign corporation, is not doing business within the state, is not engaged in the business of such transactions, or in a business connected with the claims within the meaning of statutes prescribing the conditions upon which foreign corporations may do business within the state, or providing for service of process thereon. This note cites a large number of cases supporting this holding, from both the federal and state courts. And although it decided originally that a suit could not be maintained in Utah upon certain claims assigned, it held on rehearing that it could be maintained, and that bringing an action thereon is not doing business within a state by a corporation not engaged in a business transaction, or within the meaning of the statute requiring

foreign corporations to do certain things before doing business within the state.

J. P. Kirven v. Virginia-Carolina Chem. Co. (C. C. A.), 145 Fed. 288, 7 Ann. Cas. 219, holds that an isolated commercial transaction by a foreign corporation, such as a single sale of goods, does not constitute doing business within the state, within the meaning of the prohibitory statute.

In Hutchinson v. Chase & Gilbert (C. C. A.), 45 Fed. (2d) 139, the proposition is laid down that for a foreign corporation to be present in a state or forum, there must be continuous dealings there, and that a single transaction is not enough to demand a trial away from the home of the corporation.

In Griffin v. Seaboard Airline Ry. Co. (D. C.), 38 Fed. (2d) 98, a foreign railroad corporation having no line in Missouri, and doing no business therein except solicitation of freight for interstate commerce through a commercial representative, was not doing business in such state, and hence not subject to service of process therein in suit for injuries sustained outside such state.

In Stewart v. Heisler (D. C.), 32 Fed. (2d) 519, a Nebraska corporation engaged in manufacturing and selling automobile tires, etc., and which had never been authorized to do business in, nor complied with foreign corporation laws of Iowa, and had discontinued selling its products therein through traveling salesmen, but sometimes occasionally filled mail orders from former customers in Iowa, and whose service man occasionally delivered tires in Iowa, and on a few occasions called on old customers for orders, held not "doing business" in Iowa, sufficient to be subject to service of process therein.

We conclude from an examination of the whole record that as the statute by its terms only applies to a corporation "doing business" in Iowa, that it has no application to the appellee, defendant, for it was not engaged in doing business in Iowa within the meaning of such statute. It had no office in Iowa, it had no representative in Iowa; it had, at best, only one transaction in Iowa, and that is the sale of the timber to plaintiff, if we take the allegations of the petition to be true. So it was not doing business in Iowa so as to be subject to the provisions of either section 8420 or subsection 6 of section 8421.

■■■ Some question is raised as to the sufficiency of the motion to quash the service, and as to matters set out therein.

The motion and proof submitted in form of affidavit, showed that the corporation defendant was a nonresident corporation, that is, it had never done any business in Iowa, had no agent in Iowa, and had nothing to do with the transaction with the plaintiff. The averments of the plaintiff in the resistance to the sustaining of the motion to quash service, were quite general, rather guardedly indefinite. It set up nothing but general assertions. It is hard to believe that it dealt with anybody except the Chicago company, because from there it received its lumber and made its contract with that company. Certainly there must have been some correspondence in which the appellee. defendant's name appeared, or some scrap of paper somewhere, that would have shown that it was included in the deal by which the plaintiff purchased the timber. This would naturally be in the possession of the bridge company; none of it was produced. The burden of proof was upon the plaintiff to sustain its service. It failed in that burden, and the service was properly quashed.

▌▉▌ The appellee filed what it called "Additional Abstract of Record". Motion is made to strike this, because the lines were not numbered, as required in abstracts. The only thing it sets up, in short, is that Exhibit C was a certificate of the secretary of state to the effect that Joyce-Watkins Company was not qualified and never had been qualified as a foreign corporation to transact business within the state of Iowa, and shows the default judgment against this defendant, Joyce-Watkins Co.

The reason for requiring an abstract to be numbered is so the testimony, etc., referred to can be found more readily without reading the whole page to find it. And furthermore, we think the additional abstract was not necessary, but we do not feel inclined to strike the additional abstract, as we think it would make no difference in the decision in this case, whether struck or not.

For the reasons pointed out herein, the judgment of the district court in this case is hereby affirmed.—Affirmed.

RICHARDS, C. J., and HAMILTON, STIGER, SAGER, KINTZINGER, MITCHELL, and DONEGAN, JJ., concur.