## REKO v. UNITED STATES TROTTING ASS'N.

Civ. No. 1–288.

United States District Court
S. D. Iowa, Central Division.
Jan. 15, 1953.

M. L. Mason and William Pappas, Mason City, Iowa, for plaintiff.

John C. Fontana, Columbus, Ohio, Frederic M. Miller and George R. Hise, Des Moines, Iowa, for defendant.

RILEY, District Judge.

Defendant by motion to dismiss challenges the jurisdiction of this court under Rule 12(b) (2, 4, 5) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for lack of jurisdiction over the person of the defendant, insufficiency of process and insufficiency of service of process herein. The

merits of the cause are not before us, but affidavits by both parties have been submitted and considered on the issues raised by the motion.

■ Previously during the past year in another similar action by this plaintiff against The United States Trotting Association the court considered the question of an attempted service of process upon the defendant, an Ohio nonprofit corporation for whom no one has been designated in Iowa to accept service, by substituted service upon the Secretary of State under the authority granted by Chapter 494 of the Code of Iowa, I.C.A. § 494.1 et seq. On the previous motion I ruled that such service of process was insufficient for lack of statutory provision or authority. Plaintiff thereafter brought a new suit and had the summons served personally on Dr. G. E. Van Tuyl, a resident of O'Brien County in the Northern District of Iowa, as an alleged agent for the defendant in Iowa. Defendant contends that the former ruling is controlling and that it is immaterial that the service of summons in that case was by substituted service. With that I cannot agree.

Defendant claims that the following rulings of the Iowa Supreme Court support its view: Mayer v. Wright, 234 Iowa 1158, 15 N.W.2d 268; Toole Co. v. Distributors' Group, 217 Iowa 414, 251 N.W. 689; Thornburg v. James E. Bennett & Co., 206 Iowa 1187, 221 N.W. 840; Jermaine v. Graf, 225 Iowa 1063, 283 N.W. 428; Keokuk & Hamilton Bridge Co. v. Curtin-Howe Corp., 223 Iowa 915, 274 N.W. 78; Bennett v. Chicago Lbr. & Coal Co., 201 Iowa 770, 208 N.W. 519. For alleged sufficiency of service, plaintiff relies upon Kalbach v. Service Station Equip. Co., 207 Iowa 1077, 224 N.W. 73, also cited by movant.

The Federal Rules of Civil Procedure provide:

"Rule 4. *Process* * * * (d) Summons: Personal Service. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows: * * * (3) Upon a domestic or foreign corporation * * * which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

It is further provided however by a division of this same Rule 4(d), subsection (7) that—

"(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

And Rule 4(f) states—

"(f) Territorial Limits of Effective Service. All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state."

If the service of process in this instance is valid under Iowa law it is valid in this court.

The applicable Iowa Code section, omitting unnecessary words, is—

617.3 Public Utility and foreign corporations

"If the action is against * * * any foreign corporation, service may be made upon any general agent of such corporation, * * * wherever found, or upon any * * * other agent, or person transacting the busi-

ness thereof * * * in the county where the action is brought; if there is no such agent in said county, then service may be had upon any such agent or person transacting said business in any other county."

Is Dr. Van Tuyl such an agent of The United States Trotting Association in Iowa (not merely in O'Brien County where he was served by the Marshal) as to make that corporation amenable to the jurisdiction of this court by personal service of process upon him in this state? By his affidavit in this matter Dr. Van Tuyl states in part:

"The United States Trotting Association is a corporation not for pecuniary profit organized under the laws of the State of Ohio, with its headquarters and principal office at Columbus, Ohio. The officers of said United States Trotting Association are as follows:

Honorary Chairman, E. Roland Harriman, Arden, N. Y.

Honorary Secretary, Frank L. Wiswall, 90 State St., Albany, N. Y.

Chairman of the Board, E. J. Hayes, DuQuoin, Ill.

Vice Chairman, E. C. Moriarty, 352 North Broadway, Wichita, Kans.

President, L. B. Sheppard, Hanover, Pa.

Ex. Vice President, Don R. Millar, 1349 East Broad St., Columbus, O.

Counsel, Frank L. Wiswall, 90 State St., Albany, N. Y.

Secretary, Edward F. Hackett, 1349 East Broad St., Columbus, O.

Treasurer, Dunbar W. Bostwick, Shelburne, Vt.

Assistant Treasurer, A. N. Mackay, 99 John St., New York, N. Y.

Asst. Treasurer, Sheldon L. Staples, 1349 East Broad St., Columbus, Ohio.

"I am not and have not been an officer of any kind of said United States Trotting Association. Said United States Trotting Association has a Board of Directors, 33 in number. I am a member of said Board of Directors of said United States Trotting Association and have been such a director for approximately ten years. Said Board of Directors meets twice a year, usually in March and November. The November meeting is often held at Columbus, Ohio. The March meeting is often held at some other place than Columbus, Ohio. Said Board of Directors has never met in the State of Iowa during the time that I have been a member thereof.

"As a Director of said United States Trotting Association, I am also a member of a Sub-committee of the Board, consisting of E. J. Hayes, DuQuoin, Illinois, Kay Ward, Bloomington, Illinois, and myself. We are designated as the members of the Sub-committee of the Board for District 5, which includes Iowa and Illinois, and as such, we act as a Board of Review of Appeals in grievances arising out of controversies between members of the Association. We meet at Springfield, Illinois, in January of each year and we are on call for special meetings at Chicago, Illinois, at other times during the year; we have never met in Iowa."

Affidavits filed on behalf of plaintiff Reko were made by M. E. Arnold, of Marshalltown, Iowa, a former licensed driver, holding membership in The United States Trotting Association; by V. L. Bremer, a horse trainer residing at the State Fair Grounds in Des Moines, Iowa, and a licensed driver of said Association, and by Mr. Reko himself.

Mr. Arnold states that he was suspended from the United States Trotting Association on January 20, 1952, and that the Board of Review, District No. 5, consisting of E. J. Hayes, DuQuoin, Illinois (who is stated by Dr. Van Tuyl to be chairman of the Board of the United States Trotting Association), Kay Ward, Bloomington, Illinois, and Dr. G. E. Van Tuyl, Paullina, Iowa, confirmed his suspension. That he attempted to participate in a harness race

at the Taylor County Fair at Bedford, Iowa, on August 7, 1952, and as he was about to take his horse onto the track he was informed by the Superintendent of Speed at that track that Dr. Van Tuyl had informed the superintendent that affiant was not allowed to participate and that the Taylor County Fair would "get into trouble" with the United States Trotting Association if he were allowed to participate, and further, that Dr. Van Tuyl ordered the said superintendent at that fair to have affiant removed from the grounds. That practically the same incident occurred to affiant at Mt. Pleasant, Iowa, during the first week in August, 1952, and that Dr. Van Tuyl by "active intervention" prevented him from participating in the harness races there.

Mr. Bremer asserts that he is a horse trainer, that he holds a driver's license in the United States Trotting Association, that during the Iowa State Fair in August, 1948, Dr. Van Tuyl personally intervened to prevent him from driving in the harness races at that fair; that he was present on occasions when Dr. Van Tuyl instructed track officials with respect to the rules of the United States Trotting Association in Iowa and with respect to the sanctions of the United States Trotting Association to be imposed upon individual members.

Mr. Reko states in his affidavit that he applied for a Judge's license in the United States Trotting Association and that the executive vice-president thereof acknowledged receipt of his application and wrote that "Dr. G. E. Van Tuyl has sent along his approval," that the District Board of Review of which Dr. Van Tuyl is a member has original jurisdiction for the enforcement of the rules of the Association, that they shall have the power to suspend or expel members or officials, and to revoke sanctions or licenses, and to impose any other penalty or punishment provided by the rules of the Association; that the expenses of the Board of Review are payable by the Association, and that this Board is empowered to conduct investigations with respect to violations of the rules of the United States Trotting Association, and that Dr. Van Tuyl acts as the agent of the United States Trotting Association for the enforcement of the rules and regulations of the Association in Iowa.

The facts disclosed by these affidavits, including that of Dr. Van Tuyl, make a strong showing that Dr. Van Tuyl is so personally identified with the operations of the United States Trotting Association in Iowa that his status rises to the level of an agent as contemplated by the applicable Iowa decisions above cited, especially Kalbach v. Service Station Equip. Co., 207 Iowa 1077, 224 N.W. 73, 74.

Accepting as true that defendant is a nonprofit corporation does not change the effect of the service. Under the Federal Rules quoted above, it is to be measured by the Iowa statute, also quoted. The statute applies to an action "against any foreign corporation". Whether or not it is one for pecuniary profit is not controlling. The statute prescribes the manner of commencing actions against *any* corporation. As said in the Kalbach case, supra:

"This case does not involve the construction of the interstate commerce clause of the Federal Constitution. It is not a case of mere solicitation in this state by an agent of a foreign corporation for orders which must be approved and the goods shipped from the home office of the foreign corporation, but it is a case where a general agent of the defendant foreign corporation was in the state of Iowa, acting for and on behalf of the foreign corporation."

Desirable as it may be believed to be to have this association exercise in the County and State Fair racing meets in this state, the broad powers disclosed by the affidavits "to investigate all fraudulent practices, irregularities or other acts of misconduct harmful to the sport of harness racing which shall come to their notice," such broad powers may not be exercised without the direct participation and conduct of operators vested with the arbitrary power of the association to deprive drivers and

racing officials of their right to pursue these activities which provide their means of livelihood. Such powers are exercised in the name of defendant.

The defendant is present in the state acting through such agent. It claims the right to exercise and does exercise the powers and functions for which it is created and does so through the person of such agent. His presence is not merely casual or incidental. It is purposeful. Only through his presence and action does defendant act. We quote again from the Kalbach case, 207 Iowa at page 1079, 224 N.W. at page 75.

"It cannot be questioned that the right exists in each state to enact laws for the service of original notice upon foreign corporations in such state subject to whatever constitutional limitations that may exist. It is not the province of the judicial department to encroach upon the prerogatives of the legislative department and question its policy or wishes in the enactment of any law. We therefore turn to the law in question governing the manner of commencing an action and the service of notice on the defendant as applied to corporations."

and again, 207 Iowa at page 1081, 224 N.W. at page 75:

"The early legislation on this subject intended that a person against whom an action was commenced in a court of Iowa could be served with notice of suit if he was found in Iowa and, going further, that, if such person had a general agent (that is one who is clothed with general authority to act for his principal), who could be found within the State, service might be had upon him. The same logic applies when a corporation is substituted for a natural person and it follows that the early legislation intended that in the event that an action was commenced against a corporation or company in Iowa the exact conditions prevail as provided for a natural person. It would not appear a proper construction, keeping the legislative intent in mind, that the Legislature would give a greater advantage to a corporation in the way of evading service in actions than it gave to natural persons. It is manifest also that, when service cannot be secured on a *general agent* wherever found, the service on a station, ticket, or other (than general) agent or person transacting the business thereof or selling tickets therefor in the county where the action is commenced is valid.

"We therefore conclude that a general agent in Iowa, when engaged in business transactions for his principal, whether he is acting within the strict line of the corporate business or whether he is acting within the general and express powers given by his principal, is subject to service within this state, and that such service binds his principal unless his acts are within the purview of the interstate commerce clause. A general agent of a foreign corporation, acting for it, cannot divest himself of his general powers to represent his principal and come into Iowa without those powers. The principal confers the powers of general agency, and those powers remain until the principal has withdrawn them. It is not the boundary line of a state which determines the powers of a general agent. The Legislature, by the enactment of section 11072 [now Sec. 617.3, Code of Iowa 1950], did not intend to make it difficult nor prevent the securing of service in actions commenced in this state. On the contrary, it is clear that the Legislature intended that the securing of service in actions commenced in this state should be made easy. The sections of the Code following the section in question make this evident."

Finally the opinion in the Kalbach case says, 207 Iowa at page 1082, 224 N.W. at page 76:

"We have noticed that the statute specifically states that a general agent may be served with notice wherever

found. Of course this means within the limits of the state of Iowa. There are no qualifications, reservations, or limitations found in the particular statute. No constitutional question is involved. The Legislature has defined the rule, and, in the light of the rule so defined, this court must follow the legislative pathway."

Surely the broad, drastic powers revealed here may not be exercised in the manner disclosed and within this state and leave our citizens remediless in their own forums if such arbitrary power is misused. A foreign natural person who would come and misuse such despotic power to bar a driver from racing meets throughout the state or a more limited area, would be answerable to the wronged party and amenable to service within the state for such purpose. Surely it may not be believed that the legislature would give a greater advantage to a foreign corporation in the way of evading service in actions than it gave to a foreign natural person.

■ While the question of due process was not raised in this case, recent significant language of the Supreme Court of the United States in dealing with the amenability of a foreign corporation to the courts of another state claiming that it had no agent upon whom service of process could be made, is recognized here as a helpful guide. In Internat. Shoe Co. v. State of Washington, 326 U.S. 310, at pages 316, 319, 66 S.Ct. 154, at page 158, 90 L.Ed. 95, it is said:

"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

Of similar import are statements appearing in Travelers Health Ass'n v. Com. of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L. Ed. 1154.

It appears that the Supreme Court of Iowa has so charted what it has called "the legislative pathway", that our course is marked, and that the manner of service adopted meets the requirements of the Federal Rules of Civil Procedure as detailed in Rule 4(d) by service in the manner prescribed by the law of Iowa (where the service is made), for service on the defendant in the courts of general jurisdiction in this state. Accordingly the service should be sustained and it will be so ordered.

### Order

Defendant having filed its motion to dismiss the suit herein for lack of jurisdiction over the person of the defendant, and the matter having been submitted upon written briefs and the same having been considered;

It Is Ordered that said motion be overruled. Defendant is given fifteen days to plead. An exception is granted.