See also 8 Cir., 353 F.2d 1009.

**GREAT AMERICAN INSURANCE COMPANY, a Corporation, Appellant,**

v.

**LOUIS LESSER ENTERPRISES, INC., a Corporation, and D & L Construction Company, a Corporation, and Ft. Leonard Wood C–9 Housing, Inc., a Corporation, and Ft. Leonard Wood C–10 Housing, Inc., a Corporation, and Continental Casualty Company, a Corporation, Appellees.**

**No. 18048.**

United States Court of Appeals
Eighth Circuit.

Dec. 16, 1965.

Bernard A. Reinert, of Kenney, Reinert & Hespen, St. Louis, Mo., made argument for appellant and filed brief with Francis L. Kenney, Jr., of Kenney, Reinert & Hespen, St. Louis, Mo.

Harvey L. Zuckman, Atty., Dept. of Justice, Washington, D. C., made argument for appellees Fort Leonard Wood C-9 and C-10 Housing, Inc. and filed brief with John W. Douglas, Asst. Atty. Gen., and David L. Rose, Atty., Dept. of Justice, Washington, D. C., and F. Russell Millin, U. S. Atty., Kansas City, Mo.

John A. Biersmith, of Rafter, Biersmith & Walsh, Kansas City, Mo., made argument for appellees Louis Lesser Enterprises, Inc., D & L Const. Co. & Continental Cas. Co. and filed brief with Charles J. Fraas, Jr., of Rafter, Biersmith & Walsh, Kansas City, Mo.

Before VAN OOSTERHOUT, MAT-THES and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

■ Great American Insurance Company, plaintiff below, has appealed from the order of the United States District Court (Honorable John W. Oliver) sustaining motions of all of the defendants to dismiss the complaint and cause of action, and the separate motion of defendants Louis Lesser Enterprises, Inc., D & L Construction Company, and Continental Casualty Company to dissolve and quash the order and writs of attachment.[1]

The basic questions at issue are (1) whether the court possessed jurisdiction of the subject matter; (2) whether venue was properly laid; and (3) whether service of process was sufficient to vest the court with personal jurisdiction.

In order to place these questions in proper perspective, it is essential that we engage in a review of the background facts, which appear from the complaint and the motions and documents attached thereto; admissions; interrogatories; and the hearing in the district court.

From the original and amended complaints, which were filed on June 22, 1964, and October 14, 1964, respectively, it appears that the plaintiff, Great American Insurance Company (appellant), is a New York corporation, having its principal place of business in that state; defendant, Louis Lesser Enterprises, Inc. (Lesser), is a Delaware corporation, having its principal place of business in Beverly Hills, California; defendant, D & L Construction Company, is a California corporation, having its principal place of business in North Hollywood, California; defendants, Ft. Leonard Wood C–9 Housing, Inc. (C–9) and Ft. Leonard Wood C–10 Housing, Inc. (C–10), are Delaware corporations. The complaint does not allege the location of the principal place of business of C–9 and C–10. Continental Casualty Company (Continental) is organized under the laws of Illinois and has its principal place of business in Chicago. (Hereinafter, we shall refer to all of the defendants collectively as appellees).

Appellant's complaint is in four counts. Count I alleges, in summary: (a) that on or about August 18, 1959, D & L, collaborating with two limited partnerships known as Louis Lesser Enterprises, Ltd., and Lesser Industrial Properties, Ltd., in a joint venture under the name of D & L Construction Company and Associates, entered into a contract with the United States Department of the Army for construction of 700 units of Capehart Military Housing at Ft. Leonard Wood, Missouri, (neither of the limited partnerships, nor the joint venture, is a party to this action); (b) December 31, 1961, Lesser, the corporation here sued, acquired 50% ownership interest in the assets, subject to liabilities, of the joint venture, D & L Construction Company and Associates; (c) September 11, 1959, the joint venture entered into a subcontract with Clarence W. Franks, Jr., for work and labor to be performed on the housing project, at the contract price of $658,525.52; (d) Franks executed a performance bond, appellant being surety thereon; (e) May 9, 1962, Franks assigned to appellant all of his rights, claims and causes of action against appellees; (f) Franks and appellant have fully performed under the subcontract but appellees have failed to pay the sum of $82,348.38, due under the subcontract, and the sum of $151,172.71 due for additional work resulting from changes in the specifications and from failure of appellees to properly coordinate and supervise the job.

---

1. The record fails to disclose an order dismissing the cause of action. Generally, and absent special circumstances, an order "sustaining a motion to dismiss" without more, is not appealable. See Midwestern Developments, Inc. v. City of Tulsa, 319 F.2d 53 (10 Cir. 1963); Bundy v. Gibson, 295 F.2d 62 (9 Cir. 1961). However, inasmuch as all of the parties have treated the order as one making final disposition of the action to the prejudice of plaintiff, we regard the order as tantamount to a dismissal of the action.

In this count appellant prays for judgment against Lesser and D & L, but not against C–9, C–10 or Continental, for $233,521.09, plus interest.

Count II alleges that C–9 and C–10 were alter egos of Lesser and D & L; that the acts performed in the construction of the project by C–9 and C–10 were, in fact, performed and done by Lesser and D & L, and that the acts performed by Lesser and D & L were, in fact, performed by C–9 and C–10. The prayer of this count is for judgment against only Lesser and D & L for $233,-521.09; and that C–9 and C–10 be declared alter egos and agents of Lesser and D & L.

Count III alleges, in some detail, fraud and deceit on the part of Lesser and D & L. Again, the prayer is for judgment against only Lesser and D & L for $233,521.09 actual damages and for punitive damages in the amount of $50,-000.

Count IV alleges that, pursuant to the scheme and plan of Lesser, D & L, C–9 and C–10 (but not Continental) to avoid payment of the obligations due Franks and appellant, as alleged in Counts I, II and III, appellees met at, or near, Beverly Hills, California, where they agreed to, and did, establish a fund for job claimants and job creditors having claims against appellees; that when the fund was established, Continental was named as a co-signer of all amounts to be disbursed from the fund; that in this fund are monies owed to Franks and appellant; and, that by virtue of the establishment of the fund, Lesser and Continental "have funds in their hands and under their control" in which appellant has acquired an equitable lien.

This count does not ask for any monetary judgment, but prays that Lesser and Continental be enjoined from disbursing the fund and for an accounting to appellant.

Other pertinent facts will be discussed as we consider each of the issues before us.

## SUBJECT MATTER JURISDICTION

The district court did not file a memorandum opinion, but stated its findings and conclusions orally from the bench. The court sustained the motions to dismiss on the ground that venue was lacking. Although Lesser, D & L, and Continental had, by timely motion, challenged the subject matter jurisdiction, this issue was not discussed or ruled on by the court. We, therefore, infer that the court was satisfied that jurisdiction had been established.

■ Appellees Lesser, D & L and Continental, renew their jurisdictional objection in this appeal.[2] They concede that there is complete diversity between them and the appellant. They also agree that C–9 and C–10 are Delaware corporations and "assume * * * their principal place of business is in Washington, D. C., * * *". They argue, however, that, when this action was instituted (concededly the critical time, see Russell v. New Amsterdam Casualty Co., 325 F.2d 996, 998 (8 Cir. 1964)), "C–9 and C–10 were no longer citizens of any state for diversity purposes. Since May of 1962 these corporations were officered, owned, controlled and operated by the United States Department of Army." We do not find Postal Telegraph Cable Co. v. State of Alabama, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894); Chicago, R. I. & P. R. Co. v. Long, 181 F.2d 295 (8 Cir. 1950); State Highway Commission v. Kansas City Bridge Co., 81 F.2d 689 (8 Cir. 1936), cert. denied, 298 U.S. 661, 56 S.Ct. 682, 80 L.Ed. 1386, relied upon by complaining appellees, controlling. These cases enunciate that, inasmuch as a *state* is not a citizen, a suit between a *state* and a citizen or a corporation of another state is not between citizens of different states.

---

2. Appellees C-9 and C-10 have not at any stage of the proceeding challenged the subject matter jurisdiction of the court.

■ Assuming, for the present discussion, that C–9 and C–10 are Government instrumentalities and have not consented to be sued, it does not follow that they are not corporate citizens of Delaware, where they were incorporated. The complaint so alleges, and, in the hearing before Judge Oliver, it was so stipulated. The showing that has been made convinces us that the status of C–9 and C–10 does not destroy diversity of citizenship for jurisdictional purposes.

■ Moreover, it is arguable that C–9 and C–10 are necessary and indispensable parties. Appellant seeks no relief against either. In the district court and here, appellant concedes that these corporations were made parties defendant, on an alter ego theory, solely for the purpose of obtaining valid service upon Lesser and D & L. Since C–9 and C–10 are, at most, nominal parties, the court could have dropped both of these defendants in order to retain jurisdiction of the subject matter. Rule 21, F.R.Civ.P. See also, Kerr v. Compagnie De Ultramar, 250 F.2d 860 (2 Cir. 1958); Padbury v. Dairymen's League Cooperative Ass'n, 15 F.R.D. 484 (D.C.M.D.Pa.1954).

Therefore, the circumstances impel the holding that the court was vested with jurisdiction of the subject matter.

## VENUE

Title 28, U.S.C.A., § 1391(a), provides that a civil action founded on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all of the plaintiffs or all of the defendants reside. Subsection (c), § 1391, provides: "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes".

The district court held, as previously stated, that proper venue was lacking. The basis for the court's finding is not entirely clear. However, from Judge Oliver's remarks, the assumption is warranted that he entertained the view that some of the defendant corporations were not doing business in the Western District of Missouri *at the time the action was instituted* and, hence, were not residents of the district for venue purposes.

Subsequent to the court's findings (January 18, 1965) and its formal order sustaining the motions to dismiss (February 24, 1965), we held, in Farmers Elevator Mutual Ins. Co. v. Carl J. Austad & Sons, Inc., 343 F.2d 7 (8 Cir.) (opinion filed March 18, 1965), that, when a corporation is sued, the venue requirements of § 1391 are satisfied upon showing that the corporation was transacting business in the district, out of which the cause of action arose, *at the time the cause of action accrued.*

In light of Austad, appellant contends that the venue requirements have been met. Lesser, D & L and Continental concede that Continental, C–9 and C–10 were residents of the district within the meaning of our holding in Austad. So much is also implicit in their argument relating to D & L. They assert, however, that, since Lesser "never did any business in Missouri with or without qualifying", it was not a resident of the district at the critical time and, therefore, venue is lacking.

In order to find that there was venue, with regard to Lesser, it must be demonstrated that, when appellant's cause of action arose, Lesser was doing business in the district giving rise thereto. Therefore, we must be able to determine: (1) when appellant's cause of action accrued; and (2) if, and when, Lesser was doing business in the district.

■■ Generally, a cause of action is deemed to have accrued when facts exist which enable one party to maintain an action against another, or at the time when the party owning the cause of action has a legal right to sue thereon. United States v. Lovknit Mfg. Co., 189 F.2d 454, 457 (5 Cir. 1951); 1 C.J.S. Actions § 124. More to the point, "[a] cause of action in contract accrues at the time of the breach or failure to do the thing agreed to * * * but not until then". 1 Am.Jur.2d Actions, § 89.

Although the record is voluminous (403 pages), there is scant information as to when appellant's cause of action arose. As appellant's cause of action is based upon an assignment of rights under D & L and Associates' subcontract with Franks, the difficulty stems from the failure of the record to reveal, with any degree of certainty, when the alleged breach of Franks' subcontract occurred or when payment under the contract became due. This document is not part of the record. If the subcontract requires that a demand be made before payment becomes due, or provides that the contract price is payable in installments, or contains other relevant provisions, we have not been so informed.

Although the complaint does unequivocally allege that there is *due and owing* (in our view, meaning at the time the complaint was filed in June, 1964), from Lesser and D & L, the sum of $233,521.-09, we are unable to ascertain when the total amount, or the segments thereof, *first* became due and payable. The only reference we detect, with regard to any part of the $233,521.09 becoming due, is contained in Count III of the complaint, in which it is alleged that the joint venture converted the "retainage and the monies due and owing to Clarence W. Franks, Jr." in the amount of $34,741.10, $26,156.86 *from October 19, 1961*, and $8,584.24 from May 5, 1962, "in order to permit the defendants Lesser and D & L and the defendants C-9 and C-10 to obtain and pull down contract sums and to induce the Federal Housing Commissioner to make final insuring endorsements of the notes financing the Capehart Military Housing Project". This allegation, which must be taken as true in the present posture of the case, indicates that at least a portion of appellant's cause of action accrued October 19, 1961.

As stated, in order for us to resolve the venue issue, the record must also disclose that Lesser was doing business in the district at the time appellant's cause of action accrued. The evidence is slightly more illuminating in this respect than it is concerning the time when appellant's cause of action arose. As shown at the outset, the general contract for the construction of the project was between the Department of the Army and the joint venture, D & L Construction Company and Associates. Lesser was not a party to the joint venture at the time the contract was entered into, but it is alleged, and not disputed, that, on December 31, 1961, Lesser acquired a 50% interest in the assets, subject to liabilities, of the joint venture. On October 18, 1961, the Department of the Army notified D & L Construction Company and Associates that it had determined that all work called for under the contract applicable to 400 of the units had been acceptably completed, and that the 400 units were accepted by the Department. From an affidavit executed by the Secretary of C-9 and C-10, on August 11, 1964, it appears that the project in its entirety (700 units) was not accepted by the Department until May 1, 1962. Seemingly, 300 units were completed after Lesser acquired an interest in the joint venture.

From the meagre showing that has been made, we are unable to conclusively state that Lesser was not doing business in the district at the time appellant's cause of action accrued. However, since there is a dearth of evidence bearing upon this facet of the case, we are equally unable to say that Lesser was definitely doing business in the district at that critical time. The circumstances require a remand of the cause to the district court to afford the parties the opportunity of shedding more light on the crucial questions of (1) when appellant's cause of action accrued, and (2) whether, at that time, Lesser was doing business in the Western District of Missouri.

## IN PERSONAM JURISDICTION

All of the appellees moved for dismissal for lack of jurisdiction over the persons of the defendants. The district court, having found that venue was lacking, did

not expressly make a determination of this question.[3]

■ Lesser, D & L and Continental renew their contention that personal jurisdiction over them is lacking, and correctly assert that we should, therefore, affirm even though the court may have been in error in premising its order of dismissal on lack of venue. See, Jaffke v. Dunham, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957); Brown v. Allen, 344 U.S. 443, 459–460, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Lum Wan v. Esperdy, 321 F.2d 123, 125–126 (2 Cir. 1963).

Rule 4(d) (7), F.R.Civ.P., provides:

"(d) The summons and complaint shall be served together. * * * Service shall be made as follows:

"(7) Upon a defendant of any class referred to in paragraph * * of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by * * * the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

On the basis of the foregoing rule, appellant, proceeding under § 351.630(2), V.A.M.S., (sometimes referred to as the "single act" statute),[4] caused summons issued to Lesser, D & L, C–9 and C–10, to be served upon the Secretary of State of Missouri. As shown in the margin, this statute applies only to tort actions. In an apparent effort to invoke application of the single act statute, appellant alleged fraud and deceit (a tort) in Count III of the complaint.

Following the commencement of this lawsuit and attempted service, the Missouri Supreme Court, on March 8, 1965, held that the service provisions of § 351.630(2) do not meet due process requirements, and effectively invalidated the statute. State ex rel. Pressner & Co. v. Scott, En Banc, 387 S.W.2d 539 (1965). We followed Pressner in our case of Bonnot v. Freeman Chem. Corp., 343 F.2d 68 (8 Cir., March 31, 1965).

Confronted with the dilemma resulting from the invalidation of the statute upon which reliance originally had been placed, appellant has since shifted its position. It now contends that, by virtue of V.A. M.S., § 351.630(1), service upon the Secretary of State was sufficient to confer personal jurisdiction over Lesser and D & L.

This statute provides, in material part, that service of process on a foreign corporation may be made by service on the registered agent of the corporation and, further:

"Whenever any foreign corporation *authorized to transact business* in

---

3. Another case, No. 18,049, Great American Insurance Company v. Louis Lesser Enterprises, Inc., et al., 353 F.2d 1009 (opinion filed contemporaneously with this opinion), was instituted in the Circuit Court of Pulaski County, Missouri, on June 2, 1964, and removed, by defendants C–9 and C–10, to the United States District Court for the Western District of Missouri. In that action, Judge Oliver quashed the service and sustained motions to dismiss for lack of personal jurisdiction. Service of process in that action was based upon the same Missouri state statute which is relied upon to validate the service in this action. Thus, it may be assumed that, if Judge Oliver had reached the question of in personam jurisdiction in this case, he would have quashed the service.

4. In its complaint, appellant alleged that Lesser and D & L are foreign corporations, which have done, and are doing, business in Missouri "under and by virtue of Section 351.630(2) Vernon's Ann. Mo.Stat." This statute, amended in 1961 (Laws, 1961, pp. 257–258, Cum.Supp. 1963), provides, in pertinent part, that if a foreign corporation commits *a tort* in Missouri, such act shall be deemed to be doing business in Missouri and shall be equivalent to the appointment, by the foreign corporation, of the Secretary of State of Missouri to accept service of process in actions against the corporation arising from, and growing out of, *the tort.*

this state shall fail to appoint or maintain in this state a registered agent upon whom service of legal process or service of any such notice or demand may be had, or whenever any such registered agent cannot with reasonable diligence be found at the registered office in this state of such corporation, or whenever the certificate of authority of any foreign corporation shall be forfeited, then and in every such case the secretary of state shall be irrevocably authorized as the agent and representative of such foreign corporation to accept service of any process, or service of any notice or demand required or permitted by law to be served upon such corporation." (Emphasis added).

It stands undisputed that Lesser and D & L were not licensed to do business in Missouri and that neither had appointed a registered agent for service purposes. Thus, it would appear that, since Lesser and D & L were not "*authorized* to transact business in this state", this case does not fall within the ambit of the statute relied upon. (Emphasis added).

Appellant's argument to the contrary is bottomed upon Electrical Equipment Co. v. Daniel Hamm Drayage Co., 217 F.2d 656 (8 Cir. 1954). Hamm was focused upon two sections of the Iowa statutes. Section 494.1, Iowa Code Annotated, provides for the issuance to a foreign corporation, upon application, of a permit to do business in Iowa. Section 494.2 requires a foreign corporation to appoint a resident agent for service purposes and then provides that, in the event that there is a failure to so appoint or that the agent cannot be found within the state, service may be made upon the corporation through the Secretary of State.

We held in the Hamm case, principally on the authority of Darling Stores Corp. v. Young Realty Co., 121 F.2d 112 (8 Cir. 1941), that, since the defendant corporation had transacted business in Iowa, it could not take advantage of its

failure to comply with the requirements of § 494.2 of the Iowa Code.

We are not inclined to agree that the ruling in Hamm, supra, controls disposition of the question before us. Contrary to appellant's suggestion, there is a vital distinguishing feature between the Missouri and Iowa statutes. As noted, V.A.M.S., § 351.630(1), provides for service, through the Secretary of State, upon a foreign corporation "*authorized* to transact business in this state", provided, of course, that the corporation has failed to appoint a registered agent or the agent cannot be found, or if the corporation has forfeited its charter. The Iowa statute, § 494.2, does not contain the qualifying language emphasized above.

Appellant has not cited a Missouri case supporting its interpretation of the Missouri statute and our research in that regard has disclosed none. There is merit in the argument that a foreign corporation which, without legal authority, has transacted business in the state, should not be permitted to avail itself of its own wrong in failing to comply with the statutory requirements. Perhaps the statute should be amended, or it may be that the Missouri Supreme Court would give the statute the broad interpretation contended for. But, in light of the principle that "statutes extending the jurisdiction of a state over nonresidents must be strictly construed", State ex rel. Pressner & Co. v. Scott, supra, 387 S.W.2d, at 541, and cases there cited, we are persuaded to hold that the circumstances do not bring this case within the confines of § 351.630(1), and that service upon the Secretary of State was insufficient to confer jurisdiction over the persons of Lesser and D & L.

In a further effort to obtain personal jurisdiction over Lesser and D & L, appellant contends that C–9 and C–10 were the alter egos, or agents, of Lesser and D & L and were properly served with process. It is argued that such service was the equivalent of service of process upon Lesser and D & L.

At the outset, we note that appellant's sole reason for bringing C–9 and C–10 into this action as defendants was to obtain, under its alter ego theory, through service on C–9 and C–10, personal jurisdiction over defendants Lesser and D & L.

A brief on appeal has been filed on behalf of C–9 and C–10 by the Department of Justice, directed only to the propositions that (1) at the time the action was commenced, C–9 and C–10 were instrumentalities of the federal government rather than of Lesser and D & L, and (2) dismissal of the suit, as to C–9 and C–10, was required because of their sovereign immunity from suit.

The Government says that it could be forcefully argued that C–9 and C–10 were, from their inception, federal governmental agencies and instrumentalities. However, it accurately points out that, for purposes of resolution of the instant appeal, the status of C–9 and C–10 at the time of the commencement of the action in the federal district court controls.

The Capehart Housing Act, 69 Stat. 651, as amended, 42 U.S.C. § 1594 et seq., authorizes the Secretary of Defense to enter into contracts to provide needed housing on Government property for military personnel, through a program of federally insured private financing for construction, and it also permits creation of special corporations, such as C–9 and C–10, in connection with the development of the housing projects. For an exhaustive detailing of the procedures pursued in a typical Capehart Housing Project, see our opinion in Continental Casualty Co. v. United States, etc., 305 F.2d 794, 797–798 (8 Cir. 1962), cert. denied, 371 U.S. 922, 83 S.Ct. 290, 9 L.Ed.2d 231.

May 28, 1959, D & L and Associates were notified by the Department of the Army of their successful bid by a letter of acceptability, which required them to organize C–9 and C–10, immediately placing the stock of the corporations and the resignation of the officers and directors in irrevocable escrow, to be turned over to the Department of the Army upon final acceptance of the completed housing project by that Department. C–9 and C–10, after their creation, obtained, from the Government, long-term leases on Government land and executed mortgages to private lenders on the resulting leasehold estates. The loans were then insured by the Federal Housing Commissioner (12 U.S.C. § 1748(b)), in a principal amount equal to the eligible builder's (D & L and Associates) successful bid (24 C.F.R. 803.9), but only on the condition that the Commissioner had approved the creation of C–9 and C–10 and that those corporations had engaged in no business other than that of providing the contemplated housing (24 C.F.R. 803.24).

C–9 and C–10, designated in this record as the "mortgagor builders", did not participate in the actual construction, nor do they have any ultimate interest in the housing projects, as each of the projects was placed under control of the Secretary of Defense immediately upon becoming available for occupancy.

By May, 1962, the entire capital stock of C–9 and C–10 had been transferred to the Secretary of the Army, pursuant to the provisions of the housing contract, which required the eligible builder to deposit in escrow, for delivery to the Department of the Army, the entire capital stock of C–9 and C–10 and the resignations of the officers and directors of the corporations. The resignation of the corporate officers and directors, who had been previously elected by D & L and Associates, was accepted and new officers and directors, all employees of the Department of the Army, who received no compensation from C–9 and C–10, were elected. Additionally, the Department of the Army assumed control, ownership and jurisdiction of the housing units.

Thus, it is clear that, from the time the capital stock of C–9 and C–10 was delivered to the Department of the Army, if not before, C–9 and C–10 were instrumentalities of the federal government. They were neither alter egos, nor agents, of Lesser and D & L or of any

other private party; service upon them, even though valid and effective, did not constitute service upon Lesser and D & L and did not bring the latter within the jurisdiction of the court. Compare, Pliler v. Asiatic Petroleum Co., 197 F.Supp. 212 (D.C.S.D.Tex.1961).

This brings us to the question whether service upon the Superintendent of Insurance of Missouri was sufficient to confer personal jurisdiction over Continental. It is pertinent to note that Continental is surety on the payment and performance bonds of D & L Construction Company and Associates, the general contractor.

Continental concedes that it was, at all relevant times, doing business in Missouri.

There being no claim to the contrary, we assume Continental is an insurance company within the meaning of Title 24, Chapter 375, V.A.M.S., which is applicable to "all insurance companies".

Section 375.210(2), V.A.M.S., provides, in summary, that service of process upon a foreign insurance company shall be made by delivery of a copy of the petition and summons to the Superintendent of Insurance, and that such service shall be valid and binding (1) in all actions brought by non-residents of Missouri upon any policy issued in this state, and (2) in all actions brought by non-residents of Missouri on a cause of action which arises out of "business transacted, acts done, or contracts made" in Missouri.

Appellant frankly concedes that this "is not an ₋ction" on the bonds executed by Continental and, as previously noted, appellant is not seeking a money judgment against Continental. However, in an apparent effort to show that its cause of action against Continental arose out of business done in Missouri, appellant reasons that Continental was exposed to liability because of its bonds in Missouri and that, because of such exposure, Continental arranged for the establishment of the fund in California, referred to in Count IV of the complaint. This rather farfetched and illogical argument is not supported by any authority. The cases

cited by appellant, such as Johnson v. Fire Ass'n of Philadelphia, 240 Mo.App. 1187, 225 S.W.2d 370 (1949), and State ex rel. Equitable Life Assur. Soc. v. Allen, 345 Mo. 671, 136 S.W.2d 309 (1939), involve actions on insurance policies and are inapposite.

■ We have difficulty in comprehending how Continental would be legally liable to appellant, except by virtue of the bonds. It is not claimed that the establishment of the fund created liability on the part of Continental for all or any part of the sum alleged to be due. Manifestly, if the fund had not been created, Continental would not have been sued and, indeed, the only relief appellant seeks in this regard is an order to keep the fund intact and for an accounting. In this situation, and inasmuch as the fund was established in California and is maintained in that state, there is utterly no basis in law for holding that appellant's cause of action against Continental arose out of business transacted in Missouri, within the meaning and scope of § 375.210(2), supra.

## ATTACHMENT AND GARNISHMENT PROCEEDINGS

Pursuant to an affidavit, filed by appellant on September 30, 1964 (as required by V.A.M.S., § 521.050, relating to attachment proceedings), the district court issued an order that attachment issue against the property (describing same) of Lesser and D & L. Summons and attachment were issued and the United States Marshal, Western District of Missouri, made a non est return thereon, showing that Lesser and D & L could not be found in that district. Summonses to garnishee were then served upon Continental, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Emerson Electric Manufacturing Company, and Minnesota Mining & Manufacturing Company. These garnishees duly answered interrogatories that had been submitted to them. Additionally, Lesser and D & L were notified by "certified mail" of the attachment and garnishment proceedings and, thereafter, filed motions

to dissolve the attachment and garnishments.

The court, evidently proceeding on the theory that venue was lacking, sustained the motions to dissolve and taxed costs in favor of the answering garnishees, and against the appellant.

Appellant assigns error in this ruling, contending that under Rule 4(e), F.R. Civ.P., and the applicable Missouri statutes, the court was vested with quasi in rem jurisdiction.

Rule 4(e) provides, in relevant part:

"Whenever a statute or rule of court of the state in which the district court is held provides * * * for service upon or notice to [a party] to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may * * * be made under the circumstances and in the manner prescribed in the statute or rule."

The 1963 Amendment to Rule 4(e) provides the federal courts with quasi in rem jurisdiction in original proceedings. See, Judge Nordbye, "Comments on Proposed Amendments to Rules of Civil Procedure for the United States District Courts", 18 F.R.D. 105, 106 (1956).

The underlying reasons for the amendment of Rule 4(e) have been the subject of comment in Law Review articles, and we forego additional discussion thereof. See Carrington, "The Modern Utility of Quasi in Rem Jurisdiction", 76 Harv.L. Rev. 303; Elliott & Green, "Quasi in Rem Jurisdiction in Federal Courts: The Proposed Amendments to Rule 4", 48 Ia. L.Rev. 300; and Currie, "Attachment and Garnishment in the Federal Courts", 59 Mich.L.Rev. 337.

■ This seemingly overdue amendment now permits the institution of original attachment and garnishment proceedings in actions commenced in the federal courts against non-residents, through the use of familiar state procedures by which property of the defendant is brought within the custody of the court and appropriate notice is given to the defendant.

■ Under this rule, since the court obtains original quasi in rem jurisdiction by attachment and garnishment, *in personam* jurisdiction over the defendant is not necessary. However, the plaintiff must still satisfy both subject matter jurisdictional requirements and requirements of venue. 2 Moore's Federal Practice, § 4.32[2], pp. 1236–1237; 1 Barron & Holtzhoff, Federal Practice & Procedure (1964 Supp.), § 183, p. 284; Notes of Advisory Committee on Rules, 28 U.S. C.A. (1964 Supp.), Rule 4, p. 26.

Since we have found that there is subject matter jurisdiction and that there is probably sufficient basis for venue in this case, we now address ourselves to the question whether the court became vested with quasi in rem jurisdiction. Section 521.010, V.A.M.S., provides that: "[T]he plaintiff in any civil action may have an attachment against the property of the defendant * * * where the defendant is not a resident of this state", and "where the defendant is a corporation, whose chief office or place of business is out of this state".

Lesser, D & L and Continental do not deny there is statutory authority in Missouri for quasi in rem attachment proceedings, and garnishments in aid thereof. However, they insist that the instant attachment and garnishments cannot be sustained because of lack of jurisdiction of the subject matter and lack of venue. We have held that the court is empowered to litigate the controversy in the principal action, and have disposed of the venue question.

With regard to subject matter jurisdiction, these appellees advance the argument that the $10,000 amount in controversy must be determined by the value of the property attached or garnished, rather than by the amount in controversy in the main action. From this premise, they argue that it is not shown that the amount due from any of the garnishees exceeds $10,000, exclusive of interest and costs. The question has not, to our knowledge, been judicially decided, and

the text writers seem to be in disagreement. Compare, 1 Barron & Holtzoff, Federal Practice & Procedure (1964 Supp.), § 183, p. 285, to the effect that the attached or garnished property must be "worth more than $10,000", with 2 Moore's Federal Practice, § 4.32 [2], pp. 1236–1237, where it is stated "[i]t would seem that the court should look to *the value of the underlying claim*. And this is the doctrine followed in removal cases". We find it unnecessary to decide this question for the following reasons: garnishee, National Union, filed its answer to interrogatories on December 3, 1964, stating that it "does not consider anything 'due and owing' by it to D & L Construction Company at the present stage of said proceedings", and "contends that no judgment should be entered against it in said proceedings for any amount exceeding $486,640.90". The record in case No. 18,013, National Union Fire Ins. Co. v. D & L Construction Co. et al., 353 F.2d 169 (8 Cir. Nov. 18, 1965), shows that judgment was rendered in the United States District Court for the Western District of Missouri, on March 1, 1965, in favor of D & L Construction Company and others, including D & L Construction Company and Associates (the joint venture), and against National Union, in the sum of $711,528.55. On appeal, we reversed the case for redetermination of the amount of damages due D & L. See, National Union Fire Ins. Co. v. D & L Construction Co., et al., supra. In light of National Union's answer to interrogatories and our discussion of the damage issue in No. 18,013, the conclusion is justified that the amount of the property attached, or garnished, in the hands of National Union will exceed $10,000.

Thus, we conclude that, if on remand, permissible venue is established, the court is vested with quasi in rem jurisdiction in this proceeding.

Lesser, D & L and Continental also urge that the order of dismissal should be affirmed for the reasons (a) that Franks is a necessary and indispensable party, and (b) that the complaint fails to state a cause of action upon which relief could be granted. Inasmuch as the cause must be remanded, we pretermit consideration of these contentions, particularly in view of the fact that the district court did not discuss or rule thereon.

We are constrained to observe that the problems which have confronted appellant in this, and in other suits it has instituted on the same cause of action alleged here, probably would have been avoided if appellant had filed a timely action on the general contractor's bond, as authorized by law.[5]

In summary:

(1) Jurisdiction of the subject matter has been established;

(2) service of process is insufficient to confer personal jurisdiction over Lesser, D & L, and Continental;

(3) dismissal of C–9 and C–10 is affirmed;

(4) the order dismissing the action for lack of venue and the order dissolving the writs of attachment are reversed, and the cause remanded, for further proceedings consistent with the views we have expressed.

The costs of this appeal shall be taxed equally between appellant and appellees Lesser, D & L, and Continental.

---

5. In addition to case No. 18,049, disposed of this day by us, referred to in footnote 3, supra, appellant filed an action on March 9, 1964, against Lesser, D & L and others, in the United States District Court for the Eastern District of Missouri. Judge Meredith sustained motions to quash service and, thereafter, the cause was dismissed. Appellant also sued Lesser and D & L in the Circuit Court of St. Louis County, Missouri. Apparently, that action is still pending. See, State ex rel. Great American Ins. Co. v. Jones, 396 S.W.2d 601 (Mo.Sup. Nov. 8, 1965).