**ELECTRICAL EQUIPMENT COMPANY, Inc., Appellant,**

v.

**DANIEL HAMM DRAYAGE COMPANY, d/b/a Daniel Hamm Company, Appellee.**

No. 15021.

United States Court of Appeals Eighth Circuit.

Dec. 22, 1954.

Walter A. Newport Jr., Davenport, Iowa (Wayne G. Cook, John E. Nagle, and Cook, Blair & Balluff, Davenport, Iowa, on the brief), for appellant.

J. Francis Phelan, Fort Madison, Iowa (Ernest E. Baker, L. A. Robertson, St. Louis, Mo., Johnson & Phelan, Fort Madison, Iowa, and Alexander & Robertson, St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and COLLET and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from a final judgment dismissing plaintiff's complaint for want of jurisdiction. Defendant (appellee) is a Missouri corporation. Process was served upon it in Iowa by service on the Secretary of State on June 25, 1953, who, in turn, sent copy of summons and complaint to defendant by registered mail addressed to it at its home office in St. Louis, said service being in the manner directed by section 494.2, subsection 6, Iowa Code Annotated.[1] A foreign cor-

1. "§ 494.2. Details of application—secretary of state as process agent. Said application shall also contain a statement subscribed and sworn to by at least two of the principal officers of the corporation, setting forth the following facts, to-wit: * * *

"6. Certified copy of the resolution of the board of directors of said corpo- ration giving name and address in Iowa of a resident agent on whom the service of original notice of civil suit in the courts of this state may be served. Failing which, or in the event such agent may not be found within the state, service of such process may then be made upon said corporation through the secretary of state by sending the original

poration transacting business in Iowa is required by section 494.1, Iowa Code Annotated,[2] to apply for a permit. Rule 4(d) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides for service on foreign corporations by serving an authorized resident officer or agent. Rule 4(d) (7) provides:

"(d) Summons: Personal Service. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows: * * *

"(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

Defendant filed a motion to quash service and dismiss the complaint on the ground that it was a foreign corporation and that it had not been served with process in the manner provided by the Federal Rules of Civil Procedure, that it had not transacted business in Iowa within the meaning of Chapter 494 of the Iowa Code, and, consequently, the Secretary of State of Iowa is not an agent authorized by statute to receive service of process as an agent of the defendant.

In the record appear answers of defendant to plaintiff's interrogatories, and depositions of the defendant's employees, Keough, sales manager; Lammering, superintendent of work done in Iowa; Cripps, rigger foreman; and Dallwitz, general foreman at home office, taken pursuant to Rule 34. The record discloses that defendant's principal business is the moving of heavy machinery and equipment. It contracted to move two 40-ton frequency changers for plaintiff from the DuPont plant at Fort Madison, Iowa, to flat cars on an adjoining siding. Keough, defendant's authorized representative, made several visits to Iowa to solicit the contract of employment entered into. Subsequently, the defendant sent to Iowa a foreman, a rigger foreman, and heavy equipment needed to perform the work. Its general superintendent was in Iowa twice to check on the work. Iowa workmen were employed and

and two copies thereof to him, and on the original of which he shall accept service on behalf of said corporation, retain one copy for his files and send the other by registered mail to the corporation at the address of its home office as shown by the records in his office, which service shall have the same force and effect as if lawfully made upon said corporation within the county where such civil suit could be maintained against it under the laws of this state."

2. "§ 494.1. Application for permit. Any corporation for pecuniary profit organized under the laws of another state, or of any territory of the United States, or of any foreign country, which has transacted business in the state of Iowa since September 1, 1886, or desires hereafter to transact business in this state, and which has not a permit to do such business, shall file with the secretary of state a certified copy of its articles of incorporation, duly attested by the secretary of state or other state officer in whose office the original articles were filed, accompanied by a resolution of its board of directors or stockholders authorizing the filing thereof, and also authorizing service of process to be made upon any of its officers or agents in this state engaged in transacting its business, and requesting the issuance to such corporation of a permit to transact business in this state; said application to contain a stipulation that such permit shall be subject to the provisions of this chapter. The secretary of state may accept duly certified restated articles, substituted articles, and articles or certificates of merger, or similar instruments which purport to be a complete restatement of the corporate articles in lieu of the original articles and amendments which they purport to supersede, if satisfied that such instruments in fact contain a complete restatement to the date thereof of all articles and amendments."

were paid in Iowa by checks issued in St. Louis. Lumber and other materials and gas and oil were purchased in Iowa. Skids and ramps were built to facilitate the moving of the frequency changers, and necessary repairs were made on defendant's equipment during the progress of the Iowa work. No office was maintained in Iowa, but necessary records were kept by the foreman in his rented Iowa living quarters. The contract called only for the defendant to properly load the frequency changers upon the flat cars, defendant being under no obligation in connection with their further transportation.

Plaintiff's cause of action is based on the alleged negligence of the defendant in loading and failing to properly secure a frequency changer on the flat car, as the result of which it fell to the ground and was damaged.

During the past five years defendant has been in Iowa to do three pieces of work, including the one hereinabove described, each of which involved similar moving of frequency changers. All of this work was done consecutively and the time consumed to do the three jobs was about five and one-half weeks. Defendant worked on plaintiff's contract for approximately a week before the accident. Defendant has done no work in Iowa since October of 1952. Defendant has authority to move its trucks and equipment in eight states including Iowa, and does a considerable amount of business outside of its home state.

The trial court sustained defendant's motion to quash the service and dismiss the complaint upon the basis that the record did not show defendant was doing business in Iowa to such an extent that it may be said to have been present in the state at the time of service.

The record clearly shows that the defendant is a Missouri corporation, that it never appointed a process agent in Iowa, and that it has never made application for a permit to do business in Iowa. The decisive issue in this case then is whether defendant was doing business in the state of Iowa to such an extent as to make it amenable to process in Iowa.

If defendant was actually doing business in Iowa, and hence required to comply with Chapter 494 of the Iowa Code, such compliance will be conclusively presumed to justify the service of process made. Darling Stores Corporation v. Young Realty Co., 8 Cir., 121 F.2d 112, 116; Nickerson v. Warren City Tank & Boiler Co., D.C.E.D.Pa., 223 F. 843. In the Darling Stores case, supra, 121 F.2d at page 116, the court said:

" * * * Perhaps the clearest and most exhaustive statement of the Supreme Court of Iowa with respect to the policy of the State of Iowa in relationship to such statutes is found in Sparks v. National Masonic Acc. Ass'n, 100 Iowa 458, 69 N.W. 678, 682, construing a Missouri statute similar in its provisions to the Iowa statute upon the same subject-matter. It is there held a foreign company which is shown to have transacted business in the state cannot question the validity of the service of process upon it on the ground that it has not complied with the law, such compliance being conclusively presumed from the fact of doing business in the state. With respect to this phase of the question the Supreme Court of Iowa said:

" 'There can be no valid reason why this company, which voluntarily entered the state of Missouri, and solicited and obtained business there, in defiance of the laws of that state, should be permitted to shield itself from liability in this action behind the very illegal act by means of which it was enabled to obtain the money of the deceased. To so hold would be equivalent to offering a premium for the continuance of such illegal practices.' "

Accordingly, if the defendant was actually doing business in Iowa, it would be conclusively presumed to have complied with the pertinent Iowa statutes to justi-

fy the service of process made in this case.

■ The question of whether a corporation is doing business in a state so as to be subject to the jurisdiction of the courts thereof is one of fact, and is ordinarily to be determined according to the facts of each individual case rather than by the application of fixed or definite rules. 20 C.J.S., Corporations § 1920, p. 151; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 86, 38 S.Ct. 233, 62 L.Ed. 587; International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 583, 34 S.Ct. 944, 58 L.Ed. 1479; In Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 142, Judge L. Hand, after analyzing some of the cases on the subject, states, "It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass." In the last cited case the decision is based, at least in part, on the estimate of the inconveniences which would result to the corporation from a trial away from home. In International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Supreme Court holds that an estimate of inconvenience is relevant in determining the problem, citing as authority the Hutchinson case. In Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 175 F.2d 900, 902–903, it is stated:

"The published decisions on what constitutes 'doing business' in a State by a foreign corporation are literally legion. Yet, in spite of this vast array of judicial authority, border-line cases still have to be decided each on its own peculiar set of facts, which too often cannot be fitted into a stereotyped pattern. In this field realism, not formalism, should be dominant; the problem must be solved in the light of commercial actuality, not in the aura of juristic semantics. In United States v. Scophony Corporation, 333 U.S. 795, 810, 68 S.Ct. 855, 863, 92 L.Ed. 1091, Mr. Justice Rutledge spoke of 'the practical, nontechnical, business standard.'"

Some general standards have, however, been established. In People's Tobacco Co. v. American Tobacco Co., supra, 246 U.S. at page 87, 38 S.Ct. at page 235, it is said:

"The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted."

In International Shoe Co. v. Washington, supra, 326 U.S. at pages 316–319, 66 S.Ct. at page 158, the Court reviews many cases on the subject now under consideration, and lays down a number of guides for determining our present problem, saying, among other things:

" * * * due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

\* \* \* \* \* \*

■ " 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. St. Clair v. Cox, 106 U.S. 350, 355, 1 S.Ct. 354, 359, 27 L.Ed. 222; Connecticut Mutual Life Ins. Co. v. Spratley, 172 U.S. 602, 610–611, 19 S.Ct. 308, 311, 312, 43 L.Ed. 569; Pennsylvania Lumbermen's Mut. Fire Ins. Co. v. Meyer, 197 U.S. 407, 414–415, 25 S.Ct. 483, 484, 485, 49 L. Ed. 810; Commercial Mutual Accident Co. v. Davis, 213 U.S. 245, 255–

256, 29 S.Ct. 445, 448, 53 L.Ed. 782; International Harvester Co. [of America] v. [Commonwealth of] Kentucky, supra; cf. St. Louis Southwestern R. Co. of Texas v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486. Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there. * * *

* * * * * *

■■ "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. St. Louis Southwestern R. Co. v. Alexander, supra, 227 U.S. 228, 33 S.Ct. 248; International Harvester Co. [of America] v. [Commonwealth of] Kentucky, supra, 234 U.S. 587, 34 S.Ct. 946. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. Pennoyer v. Neff, supra [95 U. S. 714, 24 L.Ed. 565], Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. * * * *"

The test of jurisdiction set out in the quotation from the American Tobacco Co. case, supra, is quoted with approval by the Iowa Supreme Court in American Asphalt Roof Corporation v. Shankland, 205 Iowa 862, 219 N.W. 28, 60 A.L.R. 986; Keokuk & Hamilton Bridge Co. v. Curtin-Howe Corporation, 223 Iowa 915, 274 N.W. 78. In each of the two cited cases the court says that the points in dispute involve Federal questions which must be determined in harmony with the decisions of the Supreme Court.

The Iowa decisions disclose that the Supreme Court of Iowa has followed the Federal rules in determining what constitutes doing business, and there is nothing in the Iowa statutes relating to foreign corporations which requires a construction of doing business which varies in any way from the Federal interpretations.

It is impossible to reconcile all the conflicting cases on the question of what constitutes doing business on the issue of jurisdiction. Many cases denying jurisdiction are based on the finding that the involved transaction was in interstate commerce or so closely related thereto as to be a part thereof. See York Manufacturing Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963; Annotations. 60 A.L.R. 986, 101 A.L.R. 126, 146 A. L.R. 941. It is generally held that a foreign corporation engaged in construction work or other labor, as distinguished from merely installing an article sold, is engaged in business within the State. 27 Am.Jur. 378, 55 A.L.R. 726; 11 A.L.R. 614; Metal Door & Trim Co. v. Hunt, 170 Okl. 240, 39 P.2d 72, 101 A.L.R. 356; Browning v. City of Waycross, 233 U.S.

16, 34 S.Ct. 578, 58 L.Ed. 828 (erection of lightning rods); General Railway Signal Co. v. Commonwealth of Virginia, 246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854 (erection of railroad signals); National Refrigerator Co. v. Southwest Missouri Light Co., 288 Mo. 290, 231 S.W. 930 (erecting artificial ice plant); Western Gas Construction Co. v. Commonwealth of Virginia, 147 Va. 235, 136 S.E. 646, 55 A.L.R. 717, affirmed 276 U.S. 597, 48 S.Ct. 319, 72 L.Ed. 723 (water-gas generating plant).

■ It now becomes necessary to apply the law to the facts of this case. We are of the opinion that the defendant was doing business in Iowa. A substantial series of contacts with the state are shown. The business was solicited in Iowa. Heavy machinery was moved in. Foremen were sent to Iowa to supervise the work. Iowa labor was employed. Materials were purchased and ramps and skids and other devices for moving the frequency changers were constructed. If a domestic person, firm, or corporation performed the work that defendant did in Iowa, no one would claim that business was not being done. We see no reason why we should give the words "doing business" a strained, artificial, or unnatural definition in order to permit the defendant to escape the state's jurisdiction. The work done in Iowa was not an isolated or insignificant transaction. Plaintiff's contract for the week's work ran to $2,250. Two other similar jobs were done in Iowa, one lasting a week and the other three weeks. If the other work was on substantially the same basis as provided by plaintiff's contract, a total consideration of $10,000 would be involved, largely for labor and the use of defendant's equipment. During all of this time defendant had the benefit of protection by the state of its property and employees. It came into the state voluntarily to do the type of work it specialized in. It seems clear that in performing its contract defendant was doing business in Iowa. It should perhaps be noted that the labor here performed was in no way an incident of an interstate sale. Plaintiff's Exhibit 1, the proposal which led up to the involved contract, is as follows:

"Daniel Hamm Company

September 12, 1952

Rupley Electric Company
707 Main Street
Keokuk, Iowa
Attention: Mr. T. C. Rupley
Gentlemen:
We propose to load two (2) Frequency Changers located at DuPont Co., Ft. Madison on railroad cars for shipment to Davenport, Iowa. This work is to be performed on a percentage basis for the sum not to exceed $2250.00.

Below are listed the rates of the men involved in performance of this work:

| | |
|---|---|
| Superintendent | $5.25 |
| Rigger foreman | 2.84½ |
| Riggers | 2.59½ |
| Millwright foreman | 2.45 |
| Millwrights | 2.25 |
| Winch tractor | 8.00 |

Materials: Vendors invoice plus 10%—Service Chg.

There will be added to the above wage rates 12½% for insurance, 15% for administrative overhead, 10% for profit. It is understood that the work is to start at our discretion but so timed that these Frequency Changers will not arrive at Davenport prior to October 1st, also that railroad cars and the freight will be furnished and paid by others.

For your information all of the men and equipment which we furnish to accomplish the above work will be completely covered with the following insurance.

Truck & Crane Liability with limits of $100,000 to $300,000.00

Public Liability with limits of $100,000 to $300,000.00

Truck & Crane Property Damage with limits of $100,000.00

Installation Insurance with limits of $100,000.00

Cargo Insurance limits of $12,000.00 per truck

Compensation limits of State requirements.

We would very much like to discuss this movement with you in detail and submit a proposal. We are,

Yours truly,
Daniel Hamm Company
J. J. Keough"

The foregoing letter at least tends to show that defendant had the hazards of its business in mind. Numerous insurance coverages were provided, the cost of which was paid for by the plaintiff. The insurance policies are not before us, so we do not know what their exact coverage may be. However, the arrangements for the insurance appear to afford a basis for an inference that the work to be done was hazardous and substantial, and that the defendant had in mind the possibility of liability being incurred as the result of its operations. Under the record in this case the maintenance of this suit in Iowa would not offend traditional notions of fair play and substantial justice.

The application of the estimate of inconvenience rule would not change the result. The accident arose in Iowa out of the work defendant was employed to do there. Presumably, most of the available witnesses to the accident live in Iowa. It was no great inconvenience to the defendant to bring its employees and equipment to Iowa to do the work. It should be no greater inconvenience to require the defendant to stand trial in Iowa.

■■ Defendant further argues that since process was not served until some nine months after defendant's activities in the state ceased, the defendant was not doing business in Iowa at the time of service of the notice and that service could not be made upon it in June of 1953. This contention is not sound. A foreign corporation which has ceased to do business in a state is still subject to service of process in suits on causes of action which arose out of business carried on by the defendant in the state. 20 C.J.S., Corporations, § 1920, p. 170; Zendle v. Garfield Aniline Works, D.C. D.N.J., 29 F.2d 415; Kelly v. Johnson Nut Co., 6 Cir., 38 F.2d 177; Elk River Coal & Lumber Co. v. Funk, 222 Iowa 1222, 271 N.W. 204, 110 A.L.R. 1415;

Darling Stores Corporation v. Young Realty Co., supra. In the Darling Stores case, the Darling Shops, Inc., had withdrawn from the state prior to the service of process. As to this the court said, 121 F.2d at page 116:

"In the case before us the fact of doing business in the state, and the necessity of compliance with the Iowa statute, was admitted by the application of Darling Shops, Inc., for, and its receipt and acceptance of, the permit granted. It could not absolve itself of the obligation assumed by withdrawal from the state after its breach of that obligation."

Since the liability sued upon arose out of defendant's contractual employment while doing business in the state, the service here made conferred jurisdiction upon the court.

The judgment of the District Court sustaining the defendant's motion to quash service and dismissing plaintiff's complaint is reversed, and this case is remanded to the District Court for further proceedings not inconsistent with this opinion.