**CAESAR'S WORLD, INC.,** formerly known as Lum's, Inc., Appellant,

v.

**SPENCER FOODS, INC.,** Appellee.

No. 73-1771.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1974.

Decided June 20, 1974.

William R. Glendon, Rogers & Wells, New York City, for appellant.

Robert R. Eidsmoe, Sioux City, Iowa, for appellee.

Before GIBSON, STEPHENSON and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

We granted appellant Caesar's World, Inc. leave to pursue this interlocutory appeal from an order of the District Court denying the motion of Caesar's World to dismiss for lack of personal jurisdiction the complaint of Spencer Foods, Inc. alleging breach of contract and fraudulent misrepresentation. We hold that personal jurisdiction of appellant was acquired by the lawful application of the Iowa long-arm statute and affirm the order of the District Court.

Caesar's World, Inc. was formerly known as Lum's, Inc. and was the creator of a franchise restaurant system known as "Lum's System". Lum's wholly owned a number of subsidiary corporations which carried on various aspects of the business of this system, including Lum's Restaurant Corporation ("LRC") and Dirr's Gold Seal Meats, Inc. ("Dirr's"). Spencer Foods, Inc. ("Spencer") is a Delaware corporation engaged in the meat packing business, with its principal headquarters in Spencer, Iowa. On July 15, 1970, Lum's and Dirr's entered into an agreement with Spencer and a newly created subsidiary of Spencer, Spencer-Dirr's, Inc., a Florida corporation, pursuant to which all the assets of Dirr's were acquired by Spencer-Dirr's. As a part of that agreement, Lum's undertook to purchase from Spencer-Dirr's "its entire requirements for meat and meat products for use in restaurants (but not hotels) owned by it or its subsidiaries in the continental United States. . . ."[1] Previously, res-

---

1. Paragraph 15 of the contract provides in part:

15. *Continuation of Business with Lum's.* It is acknowledged that for a period of years prior to this Agreement Dirr's has supplied Lum's with various meat and meat product items sold by Lum's in its business operation and that a portion of the inducement for Spencer and Spencer-Dirrs into this Agreement is the assurance that business relationship between Dirr's and Lum's will continue, and if possible expand, between Spencer-Dirrs and Lum's, following the Closing. Lum's agrees that for a period

taurants in the Lum's chain received their meat supplies from Dirr's.

In August, 1971, Lum's sold its interest in LRC and the Lum's System to a third party who in turn sold it to Riviana Foods, Inc. Riviana notified Spencer[2] on September 8, 1972 that it would discontinue using Spencer's products in Lum's Restaurants effective September 29, 1972. Spencer filed this lawsuit on January 4, 1973, alleging breach of contract for failure to perform the five year requirements provision and fraudulent misrepresentation, claiming that Lum's knew it was going to sell its franchising business when it entered into the contract. Appellant moved to dismiss for lack of in personam jurisdiction, asserting that the contract did not come within the Iowa long-arm statute and that Lum's did not have sufficient contacts with the state of Iowa to satisfy due process requirements.

The trial court found that Lum's had agreed to purchase the meat requirements for all Lum's restaurants from Spencer-Dirr's and that there were several Lum's restaurants in Iowa, and it therefore concluded that the contract was to be performed in part in Iowa within the meaning of the long-arm statute, Iowa Code § 617.3. The trial court further concluded that the minimum contacts test of the due process clause was satisfied because Lum's had guaranteed the leases for the Iowa franchises, was named as an additional insured on all policies insuring the premises covered by these leases and, under the franchise agreements, "had considerable control over how these restaurants were operated". The court found it unnecessary to consider the relationship between Lum's and its subsidiaries to determine whether the subsidiaries' contacts might be attributable to Lum's for jurisdictional purposes because it found Lum's direct contacts sufficient to sustain jurisdiction. The court also stated: "The fact that defendant has sold its restaurant divisions and is no longer doing business in Iowa is of no consequence."

Appellant argues on this appeal that (1) the contract was primarily for the sale of assets of one Florida corporation to another and was not to be performed in whole or in part in Iowa; (2) even if the long-arm statute is deemed applicable, its application would violate due process because Lum's contacts with Iowa have not been sufficient to satisfy the minimum contacts requirement; and (3) Lum's had no contacts with Iowa at all at the time the cause of action arose or at the time it was served and therefore cannot be sued in Iowa consistent with due process.

### The Iowa Long-Arm Statute

The Iowa long-arm statute provides in part:

If a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, . . . such [act] shall be deemed to be doing business in Iowa by such foreign corporation for the purpose of service of process or original notice on such foreign corporation under this section, and, if the corporation does not have a registered agent or agents in the state of Iowa, shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be its true and lawful attorney upon whom may be served all lawful process or

---

of five (5) years from and after the Closing hereunder, Lum's will purchase from Spencer-Dirrs its entire requirements for meat and meat products for use in restaurants (but not hotels) owned by it or its subsidiaries in the continental United States provided that Spencer-Dirrs is able to provide, in each instance, meat or meat products of

the type and quality sought by Lum's at a price, and with service, at least equal to or comparable with the price and service in good faith offered by Lum's by other suppliers of such products.

2. Spencer-Dirr's, Inc. was merged into Spencer Foods, Inc. in March, 1971.

original notice in actions or proceedings arising from or growing out of such contract. . . .

Iowa Code § 617.3.

When the contract was executed, appellant was a foreign corporation and appellee had its principal place of business in Iowa. The only question under the long-arm statute therefore is whether the contract was to be performed in whole or in part by either party in Iowa.

 Whether a state long-arm statute applies in any particular case is a question of state law. Simpkins v. Council Mfg. Corp., 332 F.2d 733 (8th Cir. 1964); Jennings v. McCall Corp., 320 F.2d 64 (8th Cir. 1963). The Iowa statute is to be liberally applied in actions involving foreign corporations. Lundell v. Massey-Ferguson Services N. V., 277 F.Supp. 940 (N.D.Iowa 1967); Tice v. Wilmington Chemical Corp., 259 Iowa 27, 141 N.W.2d 616 (1966). Under Iowa law, jurisdiction under the long-arm statute will be sustained "if plaintiff makes a *prima facie* showing of the existence of a contract 'to be performed in whole or in part' in Iowa." Midwest Packaging Corp. v. Oerlikon Plastics, Ltd., 279 F.Supp. 816, 818 (S.D.Iowa 1968); Sporcam, Inc. v. Greenman Bros., Inc., 340 F.Supp. 1168 (S.D.Iowa 1972); Fisher v. First National Bank of Omaha, 338 F.Supp. 525 (S.D.Iowa), appeal dismissed, 466 F.2d 511 (8th Cir. 1972). Once this prima facie showing has been made, the burden is on defendant to overcome or rebut that showing. Miller v. Vitalife Corp. of America, 173 N.W.2d 91, 92 (Iowa 1969); Tice v. Wilmington Chemical Corp., *supra.*

The contract provides that "a portion of the inducement for Spencer and Spencer-Dirrs into this Agreement is the assurance that business relationship between Dirr's and Lum's will continue, and if possible expand, between Spencer-Dirrs and Lum's, following the Clos-

ing." It specifically obligates Lum's to purchase its entire meat requirements for use in restaurants owned by it or its subsidiaries from Spencer-Dirr's for five years. At the time of execution and thereafter restaurants owned by Lum's or its subsidiaries were located and operating in Iowa.

The thrust of appellant's effort to rebut this prima facie showing is that the substance of the contract was the sale of assets of one Florida corporation to another and that all provisions relating to the transfer were carried out exclusively in Florida. This argument fails because it ignores that "portion of the inducement" quoted above.[3] A similar argument was likewise rejected in Robinson v. Merlite Land Sea & Sky, Inc., 61 Misc.2d 462, 305 N.Y.S.2d 289 (1969), affirmed, 64 Misc.2d 911, 316 N.Y.S.2d 455 (1970). In that case, an Iowa plaintiff sued a New York firm for breach of contract under the Iowa long-arm statute and obtained a default judgment when the defendant failed to appear in Iowa court. When the plaintiff sued on the judgment in New York, the defendant challenged Iowa's jurisdiction, claiming it had "done nothing more than sell gift certificates to plaintiff in New York." 305 N.Y.S.2d at 292. The court held the judgment was entitled to full faith and credit because the contract provided, *in addition* to the sale of gift certificates, that defendant would not compete with plaintiff in Iowa and defendant would recruit Iowa agents for plaintiff's benefit—promises to be performed in Iowa and therefore supplying jurisdiction under the Iowa long-arm statute.

 Lum's argues, however, that the contract does not require any performance in Iowa. Lum's reliance on Fisher v. First National Bank of Omaha, 338 F.Supp. 525, 528 (S.D.Iowa), appeal dismissed, 466 F.2d 511 (8th Cir. 1972), is misplaced. *Fisher* involved a credit card

---

**3.** Note 1, *supra.* Although irrelevant to the jurisdictional issue an indication of the significance of this "portion of the inducement" is Spencer's admission on interrogatories that its sale to Lum's Restaurants between the closing and the alleged breach totalled over $8.5 million.

contract dispute between an Iowa resident and a Nebraska bank. Use of the card had the effect of issuing a draft on the bank which the bank promised to pay on presentation through ordinary banking channels at its Omaha headquarters. The bank had no agreements with Iowa merchants regarding use of the card and the cardholder's payments were to be made to the bank in Omaha. The court held that the contract claim did not meet the requirement of the Iowa long-arm statute that a contract with an Iowa resident must be performed in whole or in part in Iowa before the long-arm statute becomes available to obtain jurisdiction. 338 F.Supp. at 528.[4] Signing a credit card purchase draft in Iowa on a Nebraska bank cannot be equated with purchasing meat from an Iowa resident for use in an Iowa restaurant. Spencer was a "resident" of Iowa and subsidiary-owned Lum's restaurants were in operation in Iowa at the time the contract was entered into. Thus an unrebutted prima facie showing has been made; the statutory requirements of Iowa Code, § 617.3 are satisfied.

### Due Process

 Having held the long-arm statute applicable by its terms, we must next determine whether its application in this case offends due process. This depends on whether the nonresident defendant has sufficient minimum contacts with the forum state so as to comply with traditional notions of fair play and substantial justice, International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), whether appellant has invoked the benefits and protections of Iowa law by reason of its activities there, Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and, since this is a contract

dispute, whether the contract has a "substantial connection" with the forum state, McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L. Ed.2d 223 (1957). This court has articulated five factors to be considered in determining whether personal jurisdiction can be exercised under these general guidelines:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365, 368 (8th Cir. 1969).

*See also* Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965); Thompson v. Ecological Science Corp., 421 F.2d 467 (8th Cir. 1970); Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27 (8th Cir. 1973); Block Industries, Inc. v. DHJ Industries, Inc., 495 F.2d 256 (8th Cir. 1974). These factors do not establish a mathematical formula from which to derive fair play and substantial justice, but rather provide a general guide in applying that abstract concept. *See* Gardner Engineering Corp. v. Page Engineering Co., *supra*, 484 F.2d at 31.

Appellant's jurisdictional contacts with Iowa are substantial. In addition to the contract with Spencer to be performed in part in Iowa, Lum's was the creator of the franchise restaurant system bearing its name, and seven of the nine Lum's restaurants in Iowa were franchised under this system. The Iowa franchisees executed franchise agreements with separate franchisors, each a wholly owned Iowa subsidiary of Lum's Restaurant Corporation, itself a subsidi-

---

4. The court, however, upheld jurisdiction over the bank by finding a wholly owned subsidiary of the bank (1) was "no more than an instrumentality or adjunct of the bank and (2) in entering into contracts in Iowa it was acting as the bank's agent to the extent that its activities constituted the doing of business in Iowa by the bank." 338 F.Supp. at 529. The court disposed of the case by transferring venue to the District of Nebraska pursuant to 12 U.S.C. § 94.

ary of appellant. These Iowa agreements expressly reserve numerous rights and benefits for appellant, although it is not a signatory party. Among the numerous express references to appellant in the franchise agreement,[5] the franchisee promises "to indemnify and save and hold harmless Lums [appellant] and its Franchisor" from any claims or loss or damage arising from the operation of the franchise. Franchisee also "covenants *to purchase from Lums* all Frankfurters used in the preparation of Lumdogs, the basic ingredients for Lumburgers and *such other items as Lums may from time to time designate*" and franchisee "*further covenants not to offer for sale or include on his menu any items which have not been approved in writing by Lums or Franchisor*" (emphasis added). The substantial control over the operation of these franchised restaurants reserved to appellant

in the franchise agreement is a significant contact with Iowa.[6] Appellant also guaranteed the leases on the Iowa property on which these restaurants were located and was named as an additional insured on the insurance policies relating to those properties.

 Appellant has clearly invoked the benefits and protections of Iowa law by reason of its activities there. Hanson v. Denckla, *supra*, 357 U.S. at 253. Since the contract was to be performed in part in Iowa, it has a "substantial connection" with that state, McGee v. International Life Ins. Co., *supra*, 355 U.S. at 223, and the convenience of the parties is served at least as well in Iowa as anywhere since the contract in dispute provides that it "shall be governed by and construed and enforced in accordance with the law of the State of Iowa." The exercise of jurisdiction in Iowa over appellant in this case is entirely consistent

5. The specific references to appellant include: Lum's is named as the "originator and creator" of the "Lums System"; Lum's is the sole owner of the various marks used by a Lum's restaurant franchise; franchisees are promised access to the supply establishments of Lum's products; the franchisor is to inspect franchisees' premises "to insure adherence to Lums standardized operational formulae"; a "Lums Operator-Manager" is provided the franchisee to assist with the opening; franchisee is licensed to use the names and marks owned by Lum's and such use "can only be carried on by Franchisee with permission of Lums, the owner of such service marks, and/or trademarks and tradenames"; franchisee agrees to maintain the confidentiality of Lum's trade secrets; Lum's as well as the franchisor has the right to inspect the franchisee's business; franchisee must post a security if "Franchisor, or Lum's, Inc., is required to make guarantees or real estate investments in connection with Franchisee's 'Locations'"; and "Neither Franchisee, Franchisor, nor Lums shall be deemed to be in violation of this Agreement if either is prevented from performing any of its obligations hereunder for any reason beyond its control. . . ."

6. Appellee urges this court, as it did below, to ignore the corporate entities of appellant's wholly-owned subsidiaries and attribute their Iowa related activities to appellant for purposes of jurisdiction. The trial

court found it unnecessary to do this because appellant's direct contacts were deemed sufficient. Appellant asserts, however, that the court's use of appellant's "considerable control" over the operation of the franchised restaurants as a "contact" demonstrates that the court did in fact pierce the corporate veil. This might well be a case in which the separate corporate entities could be ignored, *see* Lauck v. E.C. K. Chivers & Associates, 320 F.Supp. 463 (E.D.Ark.1970) (in which the corporate veils were pierced and Lum's, Inc. was subjected to Arkansas jurisdiction because of the activities of its subsidiaries); Bland v. Kentucky Fried Chicken Corp., 338 F.Supp. 871 (S.D.Tex.1971); Fisher v. First National Bank of Omaha, 338 F.Supp. 525 (S.D. Iowa), appeal dismissed, 466 F.2d 511 (8th Cir. 1972), but it is unnecessary to do so given appellant's own substantial contacts with Iowa. The franchise agreement between the Iowa franchisees and appellant's subsidiaries' subsidiaries invest appellant itself with considerable control over the question of these restaurants bearing its name. That appellant is not a signatory party does not diminish its protection as a beneficiary of the contracts under Iowa laws. Likewise, we need not determine whether the appellant's permitting its name to be used in the Iowa franchises is sufficient to subject it to jurisdiction in that state. Doug Sanders Golf Intercontinental of Southeastern Wisconsin, Inc. v. American Manhattan Industries, Inc., 359 F.Supp. 918 (E.D.Wis.1973).

with traditional notions of fair play and substantial justice.

### Service of Process

■ Appellant has argued that because it sold its entire interest in the "Lum's System" over a year before the alleged breach of contract and had no contacts with Iowa after the sale, it is immune from service of process under the minimum contacts requirement. The trial court, in declaring these facts "inconsequential", relied on Electrical Equipment Co. v. Daniel Hamm Drayage Co., 217 F.2d 656 (8th Cir. 1954), and Snyder v. Eastern Auto Distributors, Inc., 357 F.2d 552 (4th Cir.), cert. denied, 384 U.S. 987, 86 S.Ct. 1889, 16 L. Ed.2d 1004 (1966). We agree with the trial court's conclusion, but since these cases do not fully dispose of appellant's argument, some additional comment is appropriate.

In the *Electrical Equipment Co.* case, the Court held:

A foreign corporation which has ceased to do business in a state is still subject to service of process in suits on *causes of action which arose out of business carried on by defendant in the state.*

217 F.2d at 663 (emphasis added).

The case involved a tort which accrued while defendant was doing business in Iowa and was caused by defendant's activities in that state. The court had no reason to look at defendant's contacts at other times in order to sustain jurisdiction. *Snyder* followed *Electrical Equipment Co.* and involved an alleged breach of an exclusive dealership contract. When defendant cancelled plaintiff's contract, it was doing business in South Carolina. Because it had ceased to do business in that state prior to plaintiff's

filing suit, it challenged both jurisdiction and venue. The court held:

The focal time in determining whether Eastern is subject to the Court's jurisdiction and whether venue is proper is *when the cause of action arose.* [citing *Electrical Equipment Co.*] If jurisdiction and venue were proper at the time of cancellation, as we have determined, Eastern could not thwart subsequent suit by immediate withdrawal from the State. Having conducted its affairs in South Carolina for a period of seven years, Eastern remained answerable there for its contract responsibilities for a reasonable time after cessation of its business in the State.

357 F.2d at 556 (emphasis in original).

Again, the court had no reason to inquire of some other appropriate time in order to sustain jurisdiction.

■■ A breach of contract entitles a party injured thereby to redress in the courts. The timing of the breach does not determine whether traditional notions of fair play and substantial justice exist in a particular forum.[7] In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the only apparent contacts defendant had with California were sending a contract into the state and receiving premiums from the insured. It was obliged to defend a suit on the contract in California even though no contacts existed when the cause of action accrued. The Court stated: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connections with that State." 355 U.S. at 223. We think this focus on the contract is equally applicable here. Moreover, Spencer's cause of action is

---

7. The time reference for venue purposes under 28 U.S.C. § 1391(c) discussed in *Snyder* is a different problem. *See, e. g.,* Welch Scientific Co. v. Human Engineering Institute, Inc., 416 F.2d 32, 35 (7th Cir. 1969), cert. denied, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970); Farmers Elevator Mutual Insurance Co. v. Carl J. Austad & Sons, Inc., 343 F.2d 7, 11–12 (8th Cir. 1965); and Ward v. Island Creek Fuel & Transportation Co., 261 F.Supp. 810 (N.D.W.Va.1966).

premised in part on the very fact that appellant ceased doing business in Iowa and to allow that same circumstance to serve as grounds for appellant's defeating Iowa jurisdiction would be anathema to the due process concept of fair play and substantial justice.

The order of the District Court denying the Motion to Dismiss is affirmed.